CITY OF COLUMBUS, Appellant,

v.

George BARNSTONE, Appellee.

No. 01–94–00260–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

August 3, 1995.

William S. Helfand, Charles T. Jeremiah, Tina Snelling, Houston, for appellant.

Robert O'Conor, Jr., Robert D. O'Conor, Houston, for appellee.

Before WILSON, MIRABAL and DUGGAN,[1] JJ.

## OPINION ON REHEARING

WILSON, Justice.

We grant appellant's motion for rehearing, withdraw our previous opinion and judgment, and substitute the following. We deny appellant's request for en banc reconsideration as moot.

Appellant, the City of Columbus (the City), appeals the denial of its motion for summary judgment, pursuant to TEX.CIV.PRAC. & REM. CODE ANN. § 51.014(5) (Vernon Supp.1995). Appellee, George Barnstone, brought suit against the City for damages stemming from personal injuries he suffered in a head-on automobile collision with a drunk driver, Laura Ellis. The City, in its motion for summary judgment, asserted the affirmative defense of governmental (or sovereign) immunity. In its sole point of error, the City contends the trial court erred in denying its motion for summary judgment. We reverse and render.

### Fact summary

The summary judgment evidence presented by the City in support of its motion includes an affidavit from Officer Nathan Lapham. No affidavit from Officer John Ripple appears in the record. The summary judgment evidence presented by Barnstone includes his affidavit, affidavits from Laura Ellis (Ellis) and Tina Barten, and excerpts from the deposition of Ellis' mother-in-law, Vivian.

After an evening of drinking with friends, Ellis went to her mother-in-law's house to try to gain possession of her children. This attempt was in violation of a court order controlling her access to the children. Her mother-in-law called the City of Columbus police, and Officers Ripple and Lapham went to the scene. It is undisputed that Ellis was intoxicated, and that this fact was apparent to the officers.

When the officers arrived, Ellis yelled obscenities at them. According to Ellis, she went to her car to leave, but the keys were not there. She again yelled at the officers, and she stated that the officers ultimately returned her keys to her. A witness and friend of Ellis, Tina Barten, stated the officers gave her the keys and later told her to return the keys to Ellis. The officers warned Ellis not to drive that evening because she would go to jail for driving while intoxicated. Ellis' mother-in-law initially told the officers that Ellis could stay with her. Ellis' mother-in-law also told the officers that Ellis could not stay at her house if she continued to try to remove the children. Officer Lapham stated Ellis assured the officers that she would not leave and Tina Barten told them she would take care of Ellis.

After more than 30 minutes, the officers left, but despite their warning, Ellis shortly left her mother-in-law's house driving her car. Ellis drove onto a nearby highway, crossed the center line, and struck an oncoming car driven by Barnstone.

### Procedural history

Barnstone alleged in his petition the officers negligently:

1) implemented city policies;

2) returned or ordered the keys returned to an intoxicated person;

---

1. Justice Duggan, who retired on December 31, 1994, continues to sit by assignment for the disposition of this case, which was submitted prior to that date.

3) entrusted the keys or the car to an intoxicated individual; and

4) "released" the intoxicated individual.

Barnstone also alleged the City:

1) failed to train officers how to properly deal with domestic disputes;

2) had a "bad" policy concerning domestic disputes; and

3) violated his civil rights.

The City argued in its motion for summary judgment that the Texas Tort Claims Act[2] bars Barnstone's state tort claims because it is entitled to governmental immunity based on these facts. The City asserts it is immune from liability because its officers are entitled to official immunity for their actions. Additionally, the City contends Barnstone's allegations of civil rights violations are insufficient to support such a claim, and further, are barred by res judicata. The record indicates Barnstone's claim under 42 U.S.C. § 1983 was dismissed by the United States District Court for the Southern District of Texas for failure to state a cause of action.

Barnstone responded that his claims are not barred by proper application of the Tort Claims Act. Barnstone also argues the City is not immune from liability because his claims do not arise from negligent implementation of governmental policy. In addition, he claims res judicata does not bar his civil rights cause of action.

**Standard of review**

 Generally, no appeal may be taken from the denial of a summary judgment. *Novak v. Stevens,* 596 S.W.2d 848, 849 (Tex. 1980); *Community Mut. Ins. Co. v. Owen,* 804 S.W.2d 602, 605 (Tex.App.—Houston [1st Dist.] 1991, writ denied). However, there are a few recognized exceptions.

A person may appeal from an interlocutory order of a district court that . . . denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state. . . .

TEX.CIV.PRAC. & REM.CODE ANN. § 51.014(5) (Vernon 1995); *City of Houston v. Kilburn,*

849 S.W.2d 810, 811 (Tex.1993). Therefore, we consider only the City's assertion of governmental immunity based on the official immunity of the officers. We do not consider the City's claim of governmental immunity that does not derive from the officers' official immunity, nor do we consider Barnstone's civil rights claim.

 In a motion for summary judgment, the movant has the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985). When a defendant moves for summary judgment on an affirmative defense, the defendant must conclusively prove each element of the defense as a matter of law. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984); *Rose v. Baker & Botts,* 816 S.W.2d 805, 809 (Tex. App.—Houston [1st Dist.] 1991, writ denied). Evidence favoring the nonmovant will be taken as true, and every reasonable inference in favor of the nonmovant will be resolved in its favor. *Nixon,* 690 S.W.2d at 548–49; *Clark v. Pruett,* 820 S.W.2d 903, 905 (Tex.App.— Houston [1st Dist.] 1991, no writ).

**Tort Claims Act**

 The liability of a governmental unit is controlled by the Texas Tort Claims Act. *See* TEX.CIV.PRAC. & REM.CODE ANN. §§ 101.001–101.009 (Vernon 1986 & Supp. 1994). Generally, governmental units are immune from suit; however, this immunity is waived in certain instances by the act. The City's liability, if any, is controlled by the following provisions:

A governmental unit of the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omissions or the negligence of an employee acting within his scope of employment if:

(a) the property damage, personal injury, or death arose from the operation or use of a motor-driven vehicle or motor-driven equipment;

**2.** TEX.CIV.PRAC. & REM.CODE ANN. § 101.001 (Vernon 1986 & Supp.1994).

(b) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX.CIV.PRAC. & REM.CODE ANN. § 101.021 (Vernon 1986).

Section 101.021(1) of the Torts Claim Act does not govern the factual situation presented by this case. Appellee states in his brief that his claim is asserted under subsection two and not subsection one and that it is based on the officers' use of personal property in their decision to return Ellis' keys to her. In addition, for immunity to be waived under subsection one, a governmental employee rather than a third party must have been the operator of the motor vehicle causing the injury. *LeLeaux v. Hamshire-Fannett Sch. Dist.*, 835 S.W.2d 49, 51 (Tex. 1992). In this case, it is undisputed that although the injury was caused by the use of a motor vehicle, the vehicle was operated by a third person, Ellis, and not the police officers.

We next examine whether the City's governmental immunity is waived under subsection two. The Texas Supreme Court has recently construed section 101.021(2) to predicate a governmental unit's respondeat superior liability upon the liability of its employee. *DeWitt v. Harris County*, 904 S.W.2d 650, 654 (1995). In *DeWitt*, the court noted section 101.021(2) includes the proviso that a governmental unit is liable if it would, "were it a private person, be liable to the claimant according to Texas law." *Id.* The proper inquiry under section 101.021(2) therefore requires a court to recognize that, "were it a private person, the governmental unit would be entitled to assert any affirmative defenses its employee has to liability." *Id.* In *DeWitt*, the court held Harris County was not liable under section 101.021(2) for the negligence of its employee when the employee has no liability because of official immunity. *Id.* at 654.

We must therefore consider whether the officers are entitled to official immunity. Government employees, such as peace officers, are entitled to immunity from suit arising from the performance of (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994); *Font v. Carr*, 867 S.W.2d 873, 879 (Tex.App.—Houston [1st Dist.] 1993, writ dism'd w.o.j.). The question of an officer's individual negligence is immaterial when determining whether he was performing discretionary functions. *Vasquez v. Hernandez*, 844 S.W.2d 802, 804 (Tex.App.—San Antonio 1992, writ dism'd w.o.j.). As the supreme court has noted, "[t]he complex policy judgment reflected by the doctrine of official immunity, if it is to mean anything, protects officers from suit even if they acted negligently." *Chambers*, 883 S.W.2d at 655.

The summary judgment evidence presented by both parties indicates the officers were called to Ellis' mother-in-law's home in response to a report of a family disturbance. The officers observed the situation at the scene and spoke with everyone present. Before leaving, the officers warned Ellis not to drive her car. We hold the summary judgment evidence supports the conclusion that, as a matter of law, the officers were acting within the scope of their authority as peace officers.

Actions requiring personal deliberation, decision and judgment are considered discretionary; those actions which require obedience to orders or the performance of a duty to which the actor has no choice are ministerial. *Chambers*, 883 S.W.2d at 654; *Wyse v. Department of Pub. Safety*, 733 S.W.2d 224, 227 (Tex.App.—Waco 1986, writ ref'd n.r.e.). The investigatory duties of peace officers have been held to fall within those actions considered discretionary. *Wyse*, 733 S.W.2d at 227. An officer's decision concerning when and how to arrest a suspect is considered a discretionary act. *Dent v. City of Dallas*, 729 S.W.2d 114, 117 (Tex.App.—Dallas 1986, writ ref'd n.r.e.), *cert. denied*, 485 U.S. 977, 108 S.Ct. 1272, 99 L.Ed.2d 483 (1988). An officer's decision to

engage in a high-speed chase has been held to be a discretionary action. *Chambers,* 883 S.W.2d at 655. This Court recently held that a police chief was performing a discretionary act when he signed a probable cause affidavit supporting an arrest warrant. *City of Hempstead v. Kmiec,* 902 S.W.2d 118, 120 (Tex.App.—Houston [1st Dist.], 1995, n.w.h.).

■ After investigating the circumstances surrounding the reported disturbance, the officers returned Ellis' keys either to her or her friend and left after warning Ellis not to drive. Lapham stated Ellis remained on private property while the officers were present and her mother-in-law made it clear that she did not want to file charges against Ellis. The officers received assurances from Ellis that she would not leave and from Barten that she would take care of Ellis. We hold the summary judgment evidence supports the conclusion that, as a matter of law, the officers were performing discretionary actions in deciding not to arrest Ellis and returning her car keys either directly to her or indirectly through Barten.

■ As noted above, the affirmative defense of official immunity also requires the officer to show he was acting in good faith. In an analogous situation, the supreme court has held that an officer acts in good faith in a pursuit case if "a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit." *Chambers,* 883 S.W.2d at 656. In setting forth this test, the court in *Chambers* noted it was substantially derived from the test for claims of official immunity under federal law. *Id.* The federal test requires courts look to "whether a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred." *Id.* (quoting *Swint v. City of Wadley,* 5 F.3rd 1435, 1441–42 (11th Cir.1993)). The "could have believed" aspect of the test means that in order to be entitled to summary judgment, an officer must prove that a reasonably prudent officer would have acted similarly. *See Chambers,* 883 S.W.2d at 656–57.

■ Applying *Chambers* to this case, we conclude that to meet its summary judgment burden, the City was required to show that a reasonably prudent officer could have believed the officers' decision to return Ellis' keys and not to arrest her was justified. The affidavit of Officer Lapham indicates that although the officers were aware Ellis was intoxicated, they received assurances from Ellis and her mother-in-law that Ellis would stay at her mother-in-law's house. Barten also informed the officers she would take care of Ellis. Ellis did not attempt to leave in her car or move onto public property in the presence of the officers. Lapham also noted the situation "alleviated itself" during the time the officers were present.

■ The good faith test adopted by the court in *Chambers* also elevated the standard of proof for a nonmovant seeking to defeat a claim of official immunity in response to a motion for summary judgment. *Id.* at 656. To controvert the officer's summary judgment proof on good faith, the nonmovant must do more than show that a reasonably prudent officer could have decided to do otherwise; rather, the nonmovant must present evidence that no reasonable person in the officer's position could have thought the facts were such as to justify the officer's actions. *Id.* at 657; *Kmiec,* 902 S.W.2d at 120.

In her affidavit, Ellis stated she yelled at the officers when they arrived and at one point went over to her car and noticed her keys were missing. She then "cussed" at Officer Ripple and he gave her keys back to her. Ellis alleged the officers were familiar with her because of a prior arrest for public intoxication and should have known she would attempt to drive if her keys were returned. Tina Barten stated the officers gave her Ellis' car keys, and when Ellis became angry, ordered Barten to return the keys to Ellis. Ellis' mother-in-law stated she told the officers Ellis could stay with her if she wanted to go to sleep, but then told them Ellis could not stay at her house if she was going to attempt to take her children. Both Ellis and Barten allege the officers acted irresponsibly in returning her keys.

However, to controvert the officers' summary judgment proof, Barnstone is required

to do more than show that a reasonably prudent officer could have decided to do otherwise; rather, he must present some evidence showing that no reasonable officer in the same position could have thought the facts were such as to justify the actions of these officers. The statements in Lapham's affidavit regarding the assurances from Ellis that she would not leave and from Barten that she would take care of Ellis are not controverted by Barnstone's summary judgment evidence. Ellis' mother-in-law stated in her deposition that she told the officers Ellis could stay at her house and then told them Ellis could not stay with her. The summary judgment evidence does not indicate that officers Lapham and Ripple were the ones who had previously arrested Ellis, and Barnstone offered no summary judgment evidence that every reasonable officer would have arrested Ellis or maintained custody of her keys.

As the nonmovant, Barnstone is required to present some evidence that no reasonable person in the officers position could have thought the facts justified the officers' actions. We conclude the summary judgment evidence offered by Barnstone does not meet the standard set forth in *Chambers* required to controvert the summary judgment evidence offered by the City on the officers' good faith. Therefore, we hold the summary judgment evidence offered by the City proved the elements of the affirmative defense of official immunity as a matter of law.

■ The officers were entitled to official immunity for their actions. Applying *De-Witt*, we note that a governmental unit is not liable under section 101.021(2) of the Tort Claims Act for the negligence of its employee when the employee has no liability because of official immunity. *Id.* at 919, 904 S.W.2d at 654. We hold the trial court committed error in denying the City's motion for summary judgment and we sustain the City's point of error. Accordingly, we reverse and render summary judgment for the City based on the official immunity of the officers.