**CITY OF HOUSTON, Appellant,**

v.

**Regina SWINDALL, Appellee,**

**No. 01–96–00624–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 22, 1998.

Richard John Urra, Andrea Chan, Houston, for Appellant.

Eric S. Hagstette, Houston, for Appellee.

Before MIRABAL, WILSON and TAFT, JJ.

## OPINION

MIRABAL, Justice.

This is an interlocutory appeal from the denial of a motion for summary judgment filed by the City of Houston based on a claim of immunity. We reverse.

Appellee, Regina Swindall, sued appellant, the City of Houston (the City), after she was arrested for failing to appear before Municipal Court No. 5 for a traffic offense. Swindall alleged her arrest resulted from the negligent use of the City's computer system by an unidentified municipal court data terminal operator (DTO).

According to the pleadings, on November 1, 1989, a Houston police officer stopped Swindall and issued her a single traffic citation, which included two separate chargeable offenses. The ticket ordered Swindall to appear before court no. 4, if she wished to respond to the charges. Swindall appeared before court no. 4 as instructed by the ticket and paid her fine. Unbeknownst to Swindall, a data entry error had occurred causing one of her offenses to be assigned to court no. 4, and the other to court no. 5, on the same day, at the same time. She did not appear before court no. 5, the erroneously assigned court, because she did not have notice. An arrest warrant was issued soon thereafter for her failure to appear in court no. 5. Swindall received notice of the arrest warrant and attempted to contact the city by phone. Each time, she was told that it often takes some time for fines to be posted and, in time, the error would be corrected.

On May 2, 1992, two and one-half years after receiving the citation, another officer stopped Swindall and arrested her pursuant to the outstanding arrest warrant. After spending six hours in jail, Swindall appeared before a court, explained the situation, and all charges were dropped.

The City moved for summary judgment on the following relevant grounds: 1) the City enjoys sovereign immunity based on the derived judicial immunity of the DTO; and 2) the assignment of the ticket through the City's computer system is a protected judicial administrative act.

In support of its motion for summary judgment, the City relied upon the pleadings and the affidavit of Larry Miller. As the "Director and Chief Clerk of the Municipal Court Administration Department for the City of Houston," Miller attested that he was familiar with the job duties and responsibilities of the department's employees. Miller stated that at the time of the incident concerning the scheduling of Swindall's court appearance for her traffic offenses, DTOs were responsible for the docketing and scheduling of citations. According to Miller's records, at the time of the assignment of Swindall's ticket, the DTO who entered the information into the computer system acted within the course and scope of her authority. Miller opined that the DTOs are an integral part of the administrative arm of his department and are intimately associated with the administrative process of the City of Houston municipal courts.

In response to the City's motion for summary judgment, appellee argued: (1) the City was not immune from her allegations because her petition alleged the use of the city's tangible personal property causing her injury; and (2) the City was not entitled to judicial or derived judicial immunity based on the acts of its unknown employee acting as the data entry clerk. In support of her response, appellee offered the deposition testimony of Linda Vaughn, Victor Olivo, and Larry Miller.

Larry Miller testified regarding the division of responsibilities within the municipal courts system, the ticket processing system, and the nature of the DTO position. Miller described two separate departments that support the municipal courts. These two departments are the judicial and administrative departments. As the former head of the judicial department, Miller was responsible for assigning tickets to different courts. The judicial department was mainly in charge of creating the docket and insuring the smooth flow of cases through the system. The person who set the dockets worked for the presiding municipal judge. In contrast, the administrative department processed the information from citations into the City's computer system. The DTO's work in this department. According to Miller, municipal judges are not involved in the assignment of courts, dates, or times; nor do they act under the dictates of any ordinance or court instruction. Miller stated DTO's need not be deputized, nor do they perform any of the functions of the court's clerk.

Miller described the procedures used by the police department and the various support wings of the municipal courts for processing tickets. Each police officer receives a blank book of tickets. The judicial department assigns all of the tickets in any given book to a particular court. The police officer who issues the citations instructs the defendant to appear before the court listed on the citation. The police officer turns in his copy of the ticket to the police department, which forwards the tickets to the administrative department. Upon receipt of the citation, the DTOs working in the administrative department lift the information from the citation and type it into the computer. According to Miller, when two different violations appear on the same citation, it is the policy and usual practice of the department to assign the two violations to the same court, at the same time, on the same day. After processing, the information is sent to the judicial department where the court's docket is prepared.

Miller was familiar with the allegations made in this case. He stated that a DTO error in inputting the information resulted in Swindall's violations being assigned to two different courts. According to Miller, the DTO responsible for the mistake cannot be identified because the Department does not keep records of who processes each ticket. However, he concedes that the DTO had no authority or discretion to change the information.

Victor Olivo is the "Deputy Director and Assistant Chief Clerk in the City of Houston Municipal Courts Administration Department." At the time of deposition, Olivo worked directly under Miller. Olivo discussed the same ticket processing procedures that Miller outlined in his deposition. Olivo also concluded that a DTO error was the reason why Swindall's ticket was assigned to two different courts.

Linda Vaughn was an administrative assistant employed by the City of Houston judicial department. Her testimony is similar to Miller's in that she describes the same procedures used for processing tickets. Vaughn identified the ticket issued to Swindall and testified to the fact that the ticket was assigned to two different courts. Like Miller, Vaughn concluded that a DTO committed error by not inputting the information correctly.

■ Generally, no appeal may be taken from the denial of a summary judgment. *City of Columbus v. Barnstone,* 921 S.W.2d 268, 271 (Tex.App.—Houston [1st Dist.] 1995, no writ). Under section 51.014(5) of the Texas Civil Practice and Remedies Code, however, a person may appeal an interlocutory order denying a motion for summary judgment based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(5) (Vernon 1997). A claim of governmental immunity may be based on an individual's assertion of official immunity, and therefore fall within the ambit of section 51.014(5). *City of Houston v. Kilburn,* 849 S.W.2d 810, 812 (Tex.1993); *City of Columbus,* 921 S.W.2d at 271.

■ Swindall argues the government cannot base its sovereign immunity claim on the theoretical assertion of official immunity by an unnamed defendant. However, the Texas Supreme Court has recently stated that an intermediate court has jurisdiction over an interlocutory appeal perfected by the government, if the government bases its theory of sovereign immunity on either the actual or hypothetical assertion of official immunity. *City of Beverly Hills v. Guevara,* 904 S.W.2d 655, 656 (Tex.1995). Like this case, the plaintiff in the *City of Beverly Hills* did not name the relevant individual government employee in the suit. Nonetheless, the Court held that because the City based its theory of sovereign immunity on the hypothetical employee's official immunity, an interlocutory appeal was proper under TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(5). Accordingly this appeal is properly before us.

The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Id.* Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Id.*

Once a movant has established a right to summary judgment, the burden shifts to the nonmovant. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678–79 (Tex. 1979). The nonmovant must then respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *Id.*

To prevail as a movant for summary judgment, a defendant must either (1) disprove at least one element of plaintiff's theory of recovery, or (2) plead and conclusively establish each essential element of an affirmative defense to rebut the plaintiff's cause of action. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984); *Marchal v. Webb,* 859 S.W.2d 408, 412 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

In its sole point of error, the City argues the trial court erred in denying its motion for summary judgment because the data entry clerk employed by the city was entitled to judicial immunity.

The liability of a governmental unit is controlled by the Texas Tort Claims Act. TEX. CIV. PRAC. & REM.CODE ANN. § 101.001–101.109 (Vernon 1997). Generally, governmental units are immune from suit; however, the act waives this immunity in certain instances. The City's liability, if any, is controlled by the following provision:

■ A governmental unit of the state is liable for:

(2) personal injury or death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2) (Vernon 1997). Under section 101.021(2) a governmental unit will be liable under respondeat superior only if the governmental unit's employee would be liable. *DeWitt v. Harris County*, 904 S.W.2d 650, 654 (Tex.1995). The proper inquiry under section 101.021(2) requires us to recognize that the governmental unit, were it a private person, would be entitled to assert any affirmative defenses its employee has to liability. *DeWitt*, 904 S.W.2d at 654; *City of Columbus*, 921 S.W.2d at 272. Thus, if official immunity protects the governmental unit's employee, then the governmental unit retains its sovereign immunity. *DeWitt*, 904 S.W.2d at 654. The City argues it is immune from suit because the data entry clerk is protected by the doctrine of derived judicial immunity.

■ Judges enjoy absolute judicial immunity from liability for judicial acts, no matter how erroneous the act or how evil the motive, unless the act is performed in the clear absence of all jurisdiction. *Turner v. Pruitt*, 161 Tex. 532, 342 S.W.2d 422, 423 (1961); *Delcourt v. Silverman*, 919 S.W.2d 777, 781 (Tex.App.—Houston [14th Dist.] 1996, writ denied). The waiver of immunity under the Texas Tort Claims Act does not apply to:

a claim based on an act or omission of a court of this state or any member of a court of this state acting in his official capacity or to a judicial function of a governmental unit. *"Official capacity"* means all duties of office and *includes administrative decisions or actions.*

TEX. CIV. PRAC. & REM.CODE ANN. § 101.053(a) (Vernon 1997).

■ When judges delegate their authority or appoint others to perform services for the court, the judge's judicial immunity may follow the delegation or appointment. *Clements v. Barnes*, 834 S.W.2d 45, 46 (Tex.1992); *Byrd v. Woodruff*, 891 S.W.2d 689, 707 (Tex. App.—Dallas 1994, writ denied). This type of immunity is referred to as derived judicial immunity. *Clements*, 834 S.W.2d at 46; *Byrd*, 891 S.W.2d at 707; *Delcourt*, 919 S.W.2d at 782.

■ Texas Courts use the federally conceived "functional approach" to determine if a particular person enjoys derived judicial immunity. *See Imbler v. Pachtman*, 424 U.S. 409, 430–431, 96 S.Ct. 984, 994–95, 47 L.Ed.2d 128 (1976); *Hodorowski v. Ray*, 844 F.2d 1210, 1213–15 (5th Cir.1988); *Delcourt*, 919 S.W.2d at 782. Under the functional approach, we determine whether the activities of the party invoking immunity are intimately associated with the judicial process, or whether the party is functioning as an integral part of the judicial system or as an "arm of the court." *Briscoe v. LaHue*, 460 U.S. 325, 335, 103 S.Ct. 1108, 1115–16, 75 L.Ed.2d 96 (1983); *Spencer v. City of Seagoville*, 700 S.W.2d 953, 958–59 (Tex. App.—Dallas 1985, no writ). We determine whether an act is judicial in nature by its character, not by the character of the agent performing it. *Byrd*, 891 S.W.2d at 707. Consistent with the "functional approach," we must decide whether the DTO functions as an integral part of the judicial system or as an arm of the court.

Officers of the court, such as court clerks, law clerks, bailiffs, constables issuing writs, and court-appointed receivers and trustees have been accorded derived judicial immunity because they function as an arm of the court. *See Wiggins v. New Mexico State Supreme Court Clerk*, 664 F.2d 812 (10th Cir.) (state supreme court justices and clerk); *Spencer*, 700 S.W.2d at 959 (court clerk); *Delcourt*, 919 S.W.2d at 781–82 (court appointed psychologist and guardian ad litem appointed under article 11.10 of the Texas Family Code); *but see Byrd v. Woodruff*, 891 S.W.2d 689, 708 (Tex.App.—Dallas 1994, writ denied) (refusing to extend immunity to court-appointed guardian ad litem under TEX.R. CIV. P. 173). Swindall contends a DTO is unlike court clerks that have been accorded judicial immunity, because a DTO is not a "deputized" clerk and has no discretion when inputting the information from citations into the City's computer system. Swindall also argues the DTO does not act under the order or authority of any court. We disagree.

In *Spencer v. City of Seagoville*, the plaintiff sued the city of Seagoville, its municipal court clerk and its deputy court clerk alleging civil rights violations in connection with

his arrest. Plaintiff sued the clerks because they signed and filed the complaint for his previous failure to appear in court, which resulted in his arrest. 700 S.W.2d at 954. The court noted that signing and filing complaints for failure to appear in court were normal functions of municipal court clerks. *Id.* at 959. In *Spencer*, the clerks attested they acted as officers of the court in the normal course and operation of the court. *Id.*

 Similarly, the input of docketing information into the court's computer system is a normal function of the court. Miller attested that inputting ticket information into the computer system is an act within the course and scope of the DTO's employment with the City of Houston municipal court. Swindall's summary judgment evidence did not controvert the nature of the DTO's acts. According to Miller's deposition testimony, the office of the presiding judge in the judicial department was responsible for setting the docket. The administrative department DTOs entered individual docketing information into the computer system. That the DTOs are not deputized or do not have discretion in their acts does not detract from their intimate association with the judicial process. The efficient input of information in the scheduling of the municipal court's docket is an integral part of the functioning of the court. Thus, under the functional approach, the DTO acts as an arm of the court and enjoys derived judicial immunity.

Furthermore, section 30.264 of the Texas Government Code vests complete control of the operations and clerical functions of the administrative department in the presiding municipal judge, who is appointed by the mayor and city council of the City of Houston. Tex. Gov't Code Ann. §§ 30.264(c) (Vernon 1988), 30.264(d)(5) (Vernon Supp.1997). Because the DTO performs a normal judicial function at the control of the judicially immune presiding municipal judge, the DTO is entitled to derived judicial immunity.

Accordingly, we sustain the City's sole point of error.

We reverse the judgment of the trial court and render a take-nothing judgment in favor of the City.