Sylvia RAMOS, Appellant,

v.

CITY OF SAN ANTONIO, Appellee.

No. 04–97–00111–CV.

Court of Appeals of Texas,
San Antonio.

March 18, 1998.

Donald J. Mach, Law Office of Donald J. Mach, San Antonio, for Appellant.

Charles S. Frigerio, Hictor X. Saenz, Law Offices of Charles S. Frigerio, P.C., San Antonio, for Appellee.

Before HARDBERGER, C.J., and RICKHOFF and DUNCAN, JJ.

## OPINION

HARDBERGER, Chief Justice.

█ Appellant, Sylvia Ramos ("Ramos"), appeals a summary judgment granted in favor of the appellee, City of San Antonio ("City"). In her sole point of error, Ramos generally contends that the trial court erred in granting the summary judgment. We affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Ramos's son was killed as a result of a collision between the vehicle Ramos was driving and a vehicle driven by Oswaldo Mermella ("Mermella"). Ramos brought suit seeking to recover damages relating to the death of her son and alleged that Mermella was

being improperly pursued by employees of the City before the accident occurred.

On May 13, 1996, the City filed a motion for summary judgment asserting the defenses of sovereign immunity and official immunity and contending that Mermella's criminal conduct was a superseding cause of Ramos's injuries. The City attached the affidavit of San Antonio Police Officer Daniel Georgiou ("Georgiou") to its motion in support of the City's sovereign immunity and official immunity defenses. The affidavit summarizes the facts from the investigation reports as follows:

> Based upon these reports, San Antonio Police Officer Quiroga observed Oswaldo Mermella's vehicle traveling at approximately 70 to 80 miles per hour prior to the accident. Officer Quiroga was not able to chase Mermella's vehicle because of Mermella's high rate of speed. Officer Quiroga drove upon the scene of the accident, called EMS, called for other officers and investigated the accident. San Antonio Police Officer Rendon arrived and assisted Officer Quiroga by arresting Oswaldo Mermella who had fled the scene on foot.

Georgiou then concludes that Officer Quiroga and Officer Rendon: (1) could have believed that the need to immediately apprehend the suspects outweighed a clear risk of harm to the public; (2) complied with the Texas Motor Vehicle laws and the policies, procedures and regulations of the San Antonio Police Department at all times during the incident in question; (3) were acting within the course and scope of their employment and within their discretionary authority as San Antonio Police Officers; (4) acted in good faith; and (5) acted as reasonable officers would have acted under the same or similar circumstances.

On June 18, 1996, Ramos filed an amended petition acknowledging that Quiroga was acting within the course and scope of his employment. However, Ramos continued to allege that Quiroga was engaged in improper police pursuit. On the same day, Ramos filed a response to the City's motion for summary judgment. Ramos attached Quiroga's investigative report to her amended petition which is incorporated in her response.

In his report, Quiroga states that in the course of responding to a call for a minor accident, he noticed a vehicle traveling at a high rate of speed and running a stop sign. Quiroga slowed down and stopped at the stop sign because that intersection was where the minor accident to which he was responding was supposed to be located. Seeing no accident, Quiroga continued to follow the speeding vehicle, which was traveling at an even greater rate of speed. Quiroga notified his dispatcher that there was no accident at the location he was given but reported the vehicle that was speeding. Quiroga stated that he did not activate his lights because he "was not attempting to stop [the] vehicle at [that] time [but] was only attempting to keep up with the vehicle to find out why he was traveling at such a high rate of speed." Quiroga stated that at that point he was too far behind the vehicle to get a license plate number. Quiroga saw the vehicle go over a small hill but then lost sight of the vehicle; however, Quiroga then noticed debris, smoke and dust in the air and knew the vehicle had been involved in an accident.

On June 20, 1996, the parties appeared for a hearing before the Honorable Richard Garcia, an associate judge. Judge Garcia rendered his report on June 24, 1996, granting the summary judgment, and his report was approved by the Honorable Frank Montalvo, as presiding judge, the same day.

On June 26, 1996, Ramos appealed Judge Garcia's report. On July 23, 1996, Ramos filed a second amended original petition and a first amended response to the City's motion for summary judgment. Ramos attached to the amended response a portion of the reporter's record from Mermella's criminal trial at which Quiroga was called to testify. The testimony basically reaffirms the statements made in Quiroga's investigative report. In response to questioning regarding Quiroga's failure to turn on his overhead lights and attempt to stop the vehicle, Quiroga responded:

> We are able to use our discretion in stopping vehicles or pursuing vehicles. If it's going to risk lives or him, we have that discretion to pursue.

On July 30, 1996, the City filed a motion to enter an order on summary judgment pursuant to the associate judge's report. On August 26, 1996, Ramos filed a second amended response to the City's motion for summary judgment. In this response, Ramos referenced the depositions of Officers Quiroga, Rendon and Georgiou and related exhibits. Ramos prayed for leave to file the second amended response if required. During the hearing, the trial court stated that it was considering the depositions as evidence.

Although leave was granted to supplement our record with the deposition of Officers Quiroga, Rendon and Georgiou, only the deposition of Officer Quiroga was filed. In his deposition, Quiroga stated that when he initially saw Mermella's vehicle, Quiroga was approximately 400 feet behind Mermella. Although he observed Mermella violate two traffic laws—speeding and improper lane change, he did not attempt to close the gap between his vehicle and Mermella's vehicle because there was traffic in front of him, and he did not notify his dispatcher. Quiroga believed that Mermella was mad at someone possibly for cutting him off, thereby causing Mermella to drive erratically. Quiroga continued to observe Mermella because they were traveling in the same direction, but Mermella was "way up ahead of" Quiroga. After reaching the intersection where the accident to which Quiroga was responding was reported, Quiroga thought Mermella's vehicle had turned into a driveway, because "it was so far ahead of [him], [he] couldn't tell where it was." When Quiroga arrived at the area where he lost sight of Mermella, he determined that Mermella had actually turned onto another street and was already approximately three or four blocks ahead of Quiroga on that street, traveling at approximately 80 miles per hour. Quiroga then reported the vehicle to dispatch. Quiroga stated that he was then traveling about 35–40 miles per hour. Quiroga further stated that he never intended to stop Mermella's vehicle but reported it in case another officer was closer and could stop the vehicle. Quiroga stated that he did not stop Mermella because if he matched his speed to Mermella, it would be unsafe. Quiroga lost sight of Mermella because of a dip in the road, and when Quiroga reached the top of the hill, he noticed the debris from the accident.

On August 27, 1996, the City's motion to enter an order on the associate judge's report was heard. The order states that the court conducted a de novo hearing and granted the summary judgment. Ramos appeals the summary judgment order.

## 1. Standard of Review

The general standard for reviewing a motion for summary judgment has been clearly established. The movant for summary judgment is first required to disprove at least one of the essential elements of each of the plaintiff's causes of action in order to prevail on summary judgment. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991). This initial burden requires the movant to show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). In determining whether a material fact issue exists to preclude summary judgment, evidence favoring the non-movant is taken as true, and all reasonable inferences are indulged in favor of the non-movant. *Id.* Any doubt is resolved in favor of the non-movant. *Id.*

A defendant moving for summary judgment based on an affirmative defense must conclusively prove all elements of that defense as a matter of law such that there is no genuine issue of material fact. *See Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494–95 (Tex.1991); *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984). Once the defendant produces sufficient evidence to establish a right to summary judgment, the plaintiff must set forth sufficient evidence to give rise to a genuine issue of material fact. *Pinckley v. Dr. Francisco Gallegos, M.D., P.A.*, 740 S.W.2d 529, 531 (Tex.App.—San Antonio 1987, writ denied).

█ In the instant case, the trial court granted a general summary judgment. Therefore, we must consider whether any theory asserted in the City's motion supports the summary judgment. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.

1993). We will affirm the summary judgment if any theory is meritorious. *Id.*

## 2. Pursuit

■ Before considering the grounds raised by the City, we must resolve whether Quiroga was in pursuit of Mermella. Quiroga testified during Mermella's criminal trial that he was following Mermella, but he was following him at a distance. Quiroga stated that when he initially noticed Mermella, Mermella was about a block ahead and was traveling at "about 40, 50 miles per hour;" the speed limit was 30 miles per hour. Mermella's course was the same as that which Quiroga needed to take to reach the intersection at which the minor accident occurred to which Quiroga was responding. When Quiroga stopped at the intersection and did not see any accident, he continued following Mermella. Quiroga estimated that Mermella was then traveling at approximately 55 miles per hour. Mermella then turned abruptly. Quiroga stated that he could not tell exactly where Mermella had turned because he was not close; he could only see the color and type of vehicle Mermella was driving. When Quiroga arrived at the point where he saw Mermella turn, he notified dispatch that the vehicle was traveling about 80 miles per hour, and he kept following. He then lost sight of Mermella as the vehicle went over a hill and crashed into Ramos.

"Pursue" is generally defined as following with enmity or following determinedly in order to overtake. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1848 (1981). Quiroga stated that he was not in pursuit of Mermella. Furthermore, his testimony supports his statement because he states that he was initially following Mermella at a distance of one block and was later a mile behind him. Georgiou stated that Quiroga was not able to chase Mermella. We do not agree with Ramos that Quiroga's testimony raised a fact question as to whether he was in pursuit. Rather, we conclude that the summary judgment evidence established that Quiroga was not in pursuit.

## 3. Sovereign Immunity

■ Under the doctrine of sovereign immunity, a governmental unit is not liable for the torts of its officers or agents in the absence of a constitutional or statutory provision creating such liability. *State v. Terrell,* 588 S.W.2d 784, 785 (Tex.1979). The Texas Tort Claims Act ("TTCA") creates a limited waiver of sovereign immunity. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 1997). In order for immunity to be waived under the TTCA, the claim must arise under one of the three specific areas of liability for which immunity is waived, and the claim must not fall under one of the exceptions from waiver. *Alvarado v. City of Brownsville,* 865 S.W.2d 148, 155 (Tex.App.—Corpus Christi 1993), *rev'd on other grounds,* 897 S.W.2d 750 (Tex.1995).

■ The three specific areas of liability for which immunity has been waived are: (1) injury caused by an employee's use of a motor-driven vehicle; (2) injury caused by a condition or use of tangible personal or real property; and (3) claims arising from premise defects. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.021 (Vernon 1997). Since a police car is tangible personal property, Ramos's pleadings can be liberally construed as asserting an immunity waiver under both the first and second areas of liability. *See Kassen v. Hatley,* 887 S.W.2d 4, 13–14 (Tex.1994)(whether plaintiff's pleadings state cause of action under section 101.021 determined by pleadings where governmental entity prevails on motion for summary judgment); *Schaefer v. City of San Antonio,* 838 S.W.2d 688, 691 (Tex.App.—San Antonio 1992, no writ)(pleading of exception to immunity required if party seeks recovery under TTCA); *see also Holder v. Mellon Mortgage Co.,* 954 S.W.2d 786, 807 (Tex.App.—Houston [14th Dist.] 1997, n.w.h.)(police car is tangible personal property).

■ With regard to the first area of liability—injury caused by an employee's use of a motor-driven vehicle, immunity is only waived where the governmental employee, not a third party, is the operator of the motor vehicle causing the injury. *See LeLeaux v. Hamshire–Fannett Ind. Sch. Dist.,* 835 S.W.2d 49, 51 (Tex.1992); *City of Columbus v. Barnstone,* 921 S.W.2d 268, 272 (Tex.App.—Houston [1st Dist.] 1995, no writ);

*Bellnoa v. City of Austin,* 894 S.W.2d 821, 827 (Tex.App.—Austin 1995, no writ). In this case, Mermella, not Quiroga, was the operator of the vehicle that struck Ramos; therefore, immunity is not waived under the first possible area of liability.

■ With regard to the second area of liability—injury caused by a condition or use of tangible personal property, waiver in a "non-use" setting has been limited to claims in which a plaintiff alleges that a state actor has provided property that lacks an integral safety component and that the lack of the integral safety component led to the plaintiff's injuries. *See Kerrville State Hosp. v. Clark,* 923 S.W.2d 582, 585 (Tex.1996). We conclude that Quiroga's decision not to pursue Mermella was a "non-use" of tangible personal property that does not meet the test for waiver of immunity set forth in *Clark. See id.* at 585. Therefore, the second potential area of liability is not applicable, and sovereign immunity has not been waived.

### CONCLUSION

The trial court properly granted summary judgment in favor of the City on the ground of sovereign immunity. Because we find summary judgment was proper on this ground, we do not address the other grounds raised in the City's motion. The judgment of the trial court is affirmed.