Opinion issued June 20, 2002















In The

Court of Appeals

For The

First District of Texas






NO. 01-01-00114-CV






LAWRENCE EDWARD THOMPSON, Appellant


V.


BERNICE COLEMAN AND BECKY PIERPOINT DOOLAN, Appellees






On Appeal from the 278th District Court

Walker County, Texas

Trial Court Cause No. 20,691-C






O P I N I O N


 Appellant, Lawrence Edward Thompson, an inmate in the Texas Department
of Criminal Justice - Institutional Division ("TDCJ"), sued appellees, the Walker
County District Clerk, Bernice Coleman, and a deputy district clerk, Becky Pierpoint
Doolan. Thompson alleged the clerks failed to file his lawsuit against a former fellow
inmate for assault, intentionally depriving him of access to the courts in violation of
42 U.S.C. § 1983. After denying Thompson's motion for continuance, the case was
tried to a jury, and the trial court directed a verdict for the clerks after Thompson
rested. Following entry of judgment, which taxed all costs to Thompson, the district
clerk forwarded a bill of costs to the TDCJ Offender Trust Fund for collection of the
clerks' costs from Thompson's trust account. A hearing was held on Thompson's
subsequent motion to stay collection of costs more than 30 days after the judgment
was signed, after which the trial court denied the motion and awarded additional costs
to defendants. We affirm in part, and reverse and remand in part.

FACTUAL AND PROCEDURAL BACKGROUND


 Thompson was allegedly assaulted by a fellow inmate in the Estelle Unit of the
TDCJ on January 19, 1996. The present case involves the facts surrounding
Thompson's attempt to sue the fellow inmate.

 In his petition in this case, Thompson alleges that, on January 14, 1998, he
forwarded an affidavit of inability to pay costs, a trust account statement, and an
affidavit of previous filings to the district clerk in anticipation of bringing suit for
damages against his assailant. (1) Thompson further alleges that, seven days later on
January 21, 1998, he mailed an original petition and an affidavit in support of request
for citation by publication (alleging his assailant had since been released from prison)
to the district clerk. (2)

 The district clerk returned the petition and affidavit in support of request for
citation by publication to Thompson, advising him by form letter that a pauper's
statement, a certified copy of Thompson's trust account, a statement of previous suits
filed, and copies of final orders of the in-house grievance program must also be
provided. Thompson alleges he mailed his pleadings back to the district clerk,
advising the required documents had previously been forwarded on January 14, 1998,
and stating that this was not a grievable issue. (3) The district clerk again returned
Thompson's pleadings with a form letter, this time advising only that copies of final
orders of the in-house grievance program must also be provided. (4)

 Thompson alleges he next sent copies of his trust fund account statement, the
affidavit in support of citation by publication, and his original petition to the
Honorable William McAdams, district judge, and requested that he file them because
the clerk refused to do so. (5) Having received no response to that and three subsequent
written inquiries to Judge McAdams and one to the district clerk, Thompson alleges
he wrote the presiding judge of the Second Administrative Judicial Region on June
16, 1998, and requested his assistance in getting his lawsuit filed. On August 4,
1998, the district clerk returned Thompson's affidavit in support of request for
citation by publication. The district clerk advised Thompson the clerk's office did
not handle that task, and that he must handle all preparations and pay all costs for
service by publication. On September 11, 1998, Thompson again mailed the district
clerk copies of all of his previously submitted documents. It is not disputed that all
necessary documents were presented together as a single package for filing at this
time. Rather than file the lawsuit, however, the clerk's office forwarded Thompson's
documents to the Internal Affairs Division of the TDCJ, and deputy clerk Doolan
wrote and advised Thompson of that fact.

 Thompson alleges he wrote the deputy clerk in late September and the clerk in
October of 1998 to ask that they retrieve his pleadings from Internal Affairs and file
them. On December 4, 1998, the clerk received a letter from Internal Affairs, which
she forwarded to Thompson. Internal Affairs advised that they had investigated the
matter, and that Thompson had been assaulted by another inmate on January 19,
1996, but that he told their investigators he could not remember the name of his
assailant and did not wish to pursue any prosecution on the matter. Internal Affairs
advised the clerk it was closing its inquiry.

 On or about January 8, 1999, Thompson mailed a motion for leave to file
petition for writ of mandamus to this Court, seeking a writ compelling the clerk to file
his lawsuit. In an unpublished, per curiam opinion, we dismissed Thompson's
petition for lack of jurisdiction, but commended Justice O'Connor's concurring
opinion in In re Bernard, 993 S.W.2d 453 (Tex. App.--Houston [1st Dist.] 1999,
orig. proceeding) (noting that, when pleadings are tendered to the district clerk for
filing, the clerk must accept them for filing) to the attention of the district clerk. In
re Lawrence Edward Thompson, No. 01-99-00119-CV (Tex. App.--Houston [1st
Dist.] May 20, 1999, orig. proceeding) (not designated for publication).

 On July 6, 1999, Thompson wrote the district clerk and deputy clerk Doolan
and threatened to sue them for violation of his civil rights unless they filed his
lawsuit. On July 7, 1999, the district clerk replied and advised Thompson that his
lawsuit had not been received in the district clerk's office, but that, if it had been
returned to him for additional information, he should conform and return it. 
Thompson did not correspond with anyone about the matter again until he presented
the present action for filing on December 28, 1999.

 The record does not reflect that Thompson conducted any discovery after filing
this suit. In August, 2000, Thompson requested an early October trial setting, and the
case was apparently set for trial on January 2, 2001. On December 6, 2000, the
defendant clerks filed a motion for a trial continuance, which was promptly denied. 
On December 16, 2000, less than 21 days before trial, Thompson mailed a motion for
summary judgment to the clerk. At the pretrial conference held on December 28,
2000, the trial court denied the clerks' second motion for continuance based on
Thompson's agreement to submit to deposition after the hearing.

 The case was called to trial on January 2, 2001. Thompson moved for a
continuance, which the trial court denied, and the case proceeded to a jury trial. 
Thompson called only two witnesses, district clerk Coleman and deputy district clerk
Doolan, and did not testify himself. After Thompson rested on January 3, the clerks
moved for a directed verdict, which was granted, and the trial court dismissed the
jury.

 The judgment was signed on January 13, 2001. The district clerk sent a bill of
costs to the Texas Department of Criminal Justice Offender Trust Fund on January
16, 2001. Thompson filed a motion to stay collection of costs on January 29, 2001. 
The trial court held a hearing on April 16, 2001, and, by written order signed April
18, 2001, found Thompson had previously filed a "long list" of frivolous lawsuits and
appeals. (6) The trial court denied Thompson's motion to stay collection of costs, and,
as sanctions, ordered Thompson to pay all costs of court, including additional costs
for expenses of service of process, postage, transportation, housing, and medical care
incurred in connection with the appearances of Thompson in court.

DISCUSSION


 In this appeal, Thompson presents four issues, alleging it was error for: (1) the
trial court to deny his motion for a trial continuance; (2) the trial court to grant the
clerks' motion for directed verdict; (3) the district clerk to forward a bill of costs to
the Texas Department of Criminal Justice Offender Trust Fund; and (4) the trial court
to impose sanctions against him after it lost jurisdiction over the judgment. We will
address each issue in turn.


 Denial of Motion for Continuance


 In his first issue, Thompson contends it was error for the trial court to deny his
morning-of-trial motion for continuance. We disagree. A continuance may only be
granted for sufficient cause supported by affidavit, by consent of the parties or by
operation of law. Tex. R. Civ. P. 251. In his motion, filed on the morning of trial and
opposed by defendants, Thompson asserted a continuance should be granted because: 
he had filed a motion for summary judgment; he might become ill due to wet, cold
weather; he needed more time to subpoena three witnesses for trial; a continuance
would allow defendants to answer his motion for summary judgment and allow him
more time to prepare for trial; and a continuance would assist the parties and the court
to better understand the issues. In his affidavit supporting his motion, Thompson
averred only that he did not become aware of his need to subpoena three witnesses
for trial until his deposition was taken on December 28, 2000, and that he had mailed
a letter to the district clerk requesting she issue those subpoenas.

 We will not disturb the trial court's denial of a motion for continuance except
for a clear abuse of discretion. Villegas v. Carter, 711 S.W.2d 624, 626 (Tex. 1986);
Verkin v. Southwest Ctr. One, Ltd., 784 S.W.2d 92, 94 (Tex. App.--Houston [1st
Dist.] 1989, writ denied). In determining whether the trial court has abused its
discretion in denying a request for a continuance in order to secure testimony, three
nonexclusive factors are instructive: (1) the length of time the case has been on file; 
(2) the materiality of the testimony sought; and (3) whether due diligence was
exercised in obtaining the testimony. See Perrotta v. Farmers Ins. Exch., 47 S.W.3d
569, 576 (Tex. App.--Houston [1st Dist.] 2001, no pet.); Levinthal v. Kelsey-Seybold
Clinic, P.A., 902 S.W.2d 508, 510 (Tex. App.--Houston [1st Dist.] 1994, no writ).

 The fact of a pending motion for summary judgment does not compel a
continuance. Nor is anticipated cold, wet weather a ground which would compel a
continuance absent compelling evidence that illness or severe weather precludes the
party from appearing for trial. (7) But cf. Sandstrum v. Magruder, 510 S.W.2d 388, 391
(Tex. App.--Houston [1st Dist.] 1974 writ ref'd n.r.e.) (trial court abused its
discretion in refusing to reinstate case dismissed when counsel arrived late due to
severely inclement weather). We now turn to Thompson's remaining argument, and
the only one supported by his affidavit, his need to subpoena witnesses.

 Thompson alleges he was unaware of his need to subpoena three witnesses
until he was deposed on December 28, 2000, following the pre-trial conference. 
However, a plaintiff is expected to have investigated his own case prior to filing suit. 
Perrotta, 47 S.W.3d at 576. Thompson's suit was received by the district clerk on
December 28, 1999, and file stamped on January 14, 2000, when his affidavit of
inability to pay costs was also received by the clerk. By letter dated August 21, 2000,
Thompson requested his case be set for a jury trial during the first two weeks of
October. The court apparently set the case for trial on January 2, 2001, and set a
pretrial conference for December 28, 2001. This case had been pending for a year
when Thompson filed his motion for continuance on the day of trial, three months
after Thompson's own requested trial date. Further, the prompt denial of the
defendants' two motions for a trial continuance should have alerted Thompson to the
unlikelihood that the January 2 trial date would be continued. Hence, the length of
time this case had been on file does not suggest an abuse of discretion. Cf. Levinthal,
902 S.W.2d 508, 512 (holding trial court abused its discretion when case had been on
file for only three months, the discovery sought was material to the plaintiff's claims,
and the plaintiff exercised due diligence in obtaining discovery).

 Thompson asserted in his affidavit attached to his motion for continuance that
he needed to compel the attendance of three witnesses to refute the anticipated
defense that the defendants had acted reasonably. In order to succeed on his civil
rights claims, Thompson had the burden to show that the defendants acted
intentionally. While this testimony might have been material, it does not appear
Thompson acted diligently in attempting to obtain the testimony. 

 Although Thompson may not have realized what the defendants would argue
at trial until after his deposition, nothing prevented Thompson from conducting
discovery earlier in his case to determine the basis for the defendants' defense. 
Thompson never attempted to send either written discovery or take any deposition
after filing his lawsuit. Because Thompson failed to make diligent efforts to secure
discovery, the trial court was not required to grant a continuance on the morning of
trial. Perrotta, 47 S.W.3d at 576-77; Aguilar v. Alvarado, 39 S.W.3d 244, 249 (Tex.
App.--Waco 1999, pet. denied) (denial of pro se inmate's motion for continuance to
subpoena three witnesses upheld, where inmate failed to show he used due diligence
to procure sought-after testimony). Under the circumstances of this case, Thompson
has not shown the trial court abused its discretion in denying the motion for
continuance. Accordingly, we overrule issue one.


 Directed Verdict


 In his second issue, Thompson asserts the trial court erred in granting the
clerks' motion for directed verdict after Thompson rested. In reviewing the granting
of a directed verdict, the court must determine whether there is any evidence of
probative force to raise a fact issue on the material questions presented. Szczepanik
v. First Southern Trust Co., 883 S.W.2d 648, 649 (Tex. 1994). The court considers
all of the evidence in a light most favorable to the party against whom the verdict was
directed and disregards all contrary evidence and inferences, giving the losing party
the benefit of all reasonable inferences created by the evidence. Id.; White v.
Southwestern Bell Tel. Co., 651 S.W.2d 260, 261 (Tex. 1983). When the plaintiff
fails to present legally sufficient evidence on an essential element of its claim, the
granting of a directed verdict for the defendants must be affirmed. Arguelles v. UT
Family Med. Ctr., 941 S.W.2d 255, 259 (Tex. App.--Corpus Christi 1996, no writ). 
Where the trial court grants a motion for directed verdict without stating the specific
grounds on which it relied, as here, the directed verdict must be upheld if any ground
stated in the motion is meritorious. Metzger v. Sebek, 892 S.W.2d 20, 40-41 (Tex.
App.--Houston [1st Dist.] 1994, writ denied).

 In the clerks' motion for directed verdict, made orally in open court, they
advanced four grounds for granting a directed verdict: (1) Thompson's cause of
action had not yet accrued; (2) Thompson presented no evidence of intentional
conduct; (3) Thompson presented no evidence of actual harm; and (4) the clerks were
entitled to both judicial and qualified immunity. We agree Thompson presented no
evidence of actual harm and that judicial immunity applied.

 As their third ground for directed verdict, the clerks asserted that Thompson
presented no evidence of actual harm resulting from the clerks' refusal to file his
pleadings. We agree. In order to prevail on a claim of denial of access to the courts,
an inmate must prove an actual injury. Lewis v. Casey, 518 U.S. 343, 351, 116 S. Ct.
2174, 2180 (1996). None of the testimony from the clerks showed that Thompson
was harmed by their failure to file his lawsuit, and Thompson did not testify in his
own behalf. Further, although Thompson argued in response to the motion for
directed verdict that his harm was the running of the statute of limitations on his
claim, the clerk's record shows that Thompson initially filed his suit two years and
two days after his assault, outside the statute of limitations for personal injury actions. 
Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) (Vernon Supp. 2002 ). Because
Thompson failed to present legally sufficient evidence on an essential element of his
claim, actual injury, the granting of a directed verdict for the clerks was proper.

 Additionally, in their fourth ground for directed verdict, the clerks argued they
were entitled to judicial or official (qualified) immunity. Judges enjoy absolute
judicial immunity for judicial acts. City of Houston v. Swindall, 960 S.W.2d 413, 417
(Tex. App.--Houston [1st Dist.] 1998, no pet.). When judges delegate their
authority, the judge's judicial immunity may follow the delegation. Id. Court clerks,
acting in the course of their duties, are accorded judicial immunity because they
function as an arm of the court. Id.; Spencer v. City of Seagoville, 700 S.W.2d 953,
958-59 (Tex. App.--Dallas 1985, no writ). The clerks testified at trial that they were
acting in the course of their duties at all times relevant to their handling of
Thompson's pleadings. Considering all of the evidence in a light most favorable to
the party against whom the verdict was directed, and disregarding all contrary
evidence and inferences, giving the losing party the benefit of all reasonable
inferences created by the evidence, we also find no evidence was introduced at trial
that the clerks were acting outside the course of their duties. Therefore, the clerks
were entitled to judicial immunity and the directed verdict was proper. Accordingly,
we overrule Thompson's second issue.


 Forwarding the Bill of Costs


 In his third issue, Thompson complains the district clerk should not have
forwarded a bill of costs to the TDCJ Offender Trust Fund. We interpret Thompson's
complaint as a challenge to the form of the trial court's assessment of costs against
him in the judgment without specific reference to section 14.006 or section 14.007 (8)
of the Texas Civil Practice and Remedies Code. Under section 14.006:

 (a) A court may order an inmate who has filed a claim to pay court fees,
court costs, and other costs in accordance with this section and Section
14.007. The clerk of the court shall mail a copy of the court's order and
a certified bill of costs to the department or jail, as appropriate.


 (b) On the court's order, the inmate shall pay an amount equal to the
lesser of:


 (1) 20 percent of the preceding six months' deposits to the
inmate's trust account; or


 (2) the total amount of court fees and costs.


 (c) In each month following the month in which payment is made under
Subsection (b), the inmate shall pay an amount equal to the lesser of:


 (1) 10 percent of that month's deposits to the trust account; or


 (2) the total amount of court fees and costs that remain unpaid.


 (d) Payments under Subsection (c) shall continue until the total amount
of court fees and costs are paid or until the inmate is released from
confinement.


 (e) On receipt of a copy of an order issued under Subsection (a), the
department or jail shall withdraw money from the trust account in
accordance with Subsections (b), (c), and (d). The department or jail
shall hold the money in a separate account and shall forward the money
to the court clerk on the earlier of the following dates:


 (1) the date the total amount to be forwarded equals the total
amount of court fees and costs that remains unpaid; or


 (2) the date the inmate is released.


 (f) The inmate shall file a certified copy of the inmate's trust account
statement with the court. The statement must reflect the balance of the
account at the time the claim is filed and activity in the account during
the six months preceding the date on which the claim is filed. The court
may request the department or jail to furnish the information required
under this subsection.


Tex. Civ. Prac. & Rem. Code Ann. § 14.006 (Vernon Supp. 2002).

 Thompson argues that, unless an order for an inmate to pay costs specifically
references section 14.006 or section 14.007, the order does not authorize the TDCJ
to make deductions from his trust account. Although we do not agree such an order
must in all cases expressly reference section 14.006 or section 14.007, it must follow
the format prescribed by those statutes. When a trial court orders payment of all costs
by an inmate without following the format prescribed by section 14.006(b), (c), and
(d), the trial court exceeds its authority. Bonds v. Texas Dept. of Criminal Justice,
953 S.W.2d 233, 234 (Tex. 1997) (holding trial court must obtain copy of trust
account statement for the six months preceding filing of suit and calculate amounts
due); Thomas v. Knight, 52 S.W.3d 292, 296 (Tex. App.--Corpus Christi 2001, pet.
denied). Here, the trial court's judgment merely states: "All costs of Court are taxed
to the Plaintiff." Accordingly, we sustain Thompson's third issue.


 Imposition of Sanctions


 Thompson's last issue asserts the trial court erred in imposing sanctions against
him more than 30 days after the judgment was signed. In his motion to stay collection
of costs, Thompson complained that the judgment taxing costs against him did not
refer to sections 14.006 and 14.007, and that this issue would be a part of his appeal. 
At the hearing on the motion, the trial court took evidence of Thompson's previous
filings under section 14.007. By written order signed April 18, 2001, the trial court
found Thompson had previously filed a "long list" of frivolous lawsuits and appeals. 
The trial court denied Thompson's motion to stay collection of costs, and ordered
Thompson to pay all costs of court, including additional costs authorized under
section 14.007. However, the trial court's order did not follow the format prescribed
by section 14.006.

 Because Thompson did not file a motion for new trial or a motion to correct,
reform or modify the judgment, the trial court's plenary power to vacate or change the
judgment expired on February 12, 2001, 30 days after the judgment was signed. Tex.
R. Civ. P. 329b. We think Thompson's motion to stay collection of costs was an
attempt under Texas Rule of Appellate Procedure 24 to suspend enforcement of the
judgment pending his appeal. Such proceedings are within the trial court's authority
even after the court loses plenary power. Tex. R. App. P. 24.3.

 Thus, that portion of the trial court's order of April 18, 2001 denying
Thompson's motion to stay collection of costs was within the court's post-judgment
authority. However, that portion of the trial court's order imposing additional costs
on Thompson is an attempt to modify its judgment outside the trial court's plenary
power and is void. Further, even had the trial court not lost plenary power, its order
of April 18, 2001, exceeded the trial court's authority in ordering payment of all costs
because it failed to follow the format prescribed by section 14.006, for the same
reasons discussed above. Thus, we sustain in part Thompson's fourth issue.

CONCLUSION

 We affirm that portion of the judgment of the trial court that the plaintiff take
nothing by his suit. We further vacate that portion of the trial court's order of April
18, 2001 awarding additional costs, reverse that portion of the judgment taxing all
costs to Thompson, and remand this case to the trial court for further proceedings
consistent with this opinion. Bonds, 953 S.W.2d at 234.



 

 Margaret Garner Mirabal

 Justice


Panel consists of Justices Mirabal, Taft, and Smith. (9)

Do not publish. Tex. R. App. P. 47.4.
1. A trust account statement and an affidavit of previous filings are required of
inmates claiming indigent status by Tex. Civ. Prac. & Rem. Code Ann. § 14.004
(Vernon Supp. 2002).
2. We note that Thompson's alleged date of mailing his original petition was
two years and two days after the alleged date of the incident which formed the basis
for his original lawsuit.
3. The grievance system is the exclusive administrative remedy available to an
inmate for a claim for relief against the TDCJ. When such a remedy is available, it
must first be exhausted before the inmate may file a lawsuit, and the inmate must file
an affidavit and a copy of the grievance system decision with his lawsuit. Tex.
Gov't Code Ann. § 501.008(d) (Vernon 1998); Tex. Civ. Prac. & Rem. Code Ann.
§ 14.005(a) (Vernon Supp. 2002). However, the grievance system only applies to
claims against the TDCJ, and does not apply to claims by inmates against other
inmates. Tex. Gov't Code Ann. § 501.008(a) (Vernon 1998).
4. It is unclear whether the clerk initially retained Thompson's affidavit of
inability to pay costs, trust account statement, and the affidavit of previous filing that
had been mailed on January 14, 1998. Retention is suggested by the omission of
those documents from the second form letter sent to Thompson. However, Coleman
testified at trial that she mailed those documents back to Thompson because they had
not been accompanied by a petition.
5. This procedure was suggested by Justice O'Connor in her concurring opinion
in In re Bernard, 993 S.W.2d 453, 455 (Tex. App.--Houston [1st Dist.] 1999, orig.
proceeding) when a party is faced with a recalcitrant district clerk.
6. At the hearing, the court took evidence of 13 other lawsuits which have been
filed by Thompson in Walker and Travis Counties. Eight were dismissed as
frivolous, of which three were affirmed by a court of appeals and appeals were
pending on two others. One was currently pending in a trial court. Two were
disposed of by summary judgment and were then on appeal. The remaining two
lawsuits filed by Thompson were also dismissed. Thompson also admitted to filing
an additional five or six lawsuits in Houston County, and an additional 10 or more
lawsuits in federal court, one or two of the latter having been dismissed as frivolous,
and the others he just lost.
7. We note that Thompson was in fact able to attend the trial despite the cold,
wet weather, as he appeared on the morning of trial and presented his motion for
continuance to the court in person.
8. Section 14.007 authorizes collection of other costs in addition to traditional
costs of court should the court find the inmate has previously filed an action which
has been dismissed as frivolous, such as expenses incurred by the court or the TDCJ
for service of process, postage or transportation incurred in connection with the
appearance of the inmate in the court. Tex. Civ. Prac. & Rem. Code Ann. § 14.007
(Vernon Supp. 2002).
9. The Honorable Jackson B. Smith, retired Justice, Court of Appeals, First
District of Texas at Houston, participating by assignment.