**CITY OF BALCH SPRINGS, Texas, Appellant,**

v.

**Diana Hall AUSTIN, Individually, and as Administratrix of the Estate of Jimmy Wayne Hall, Deceased, Appellee.**

No. 05–09–00984–CV.

Court of Appeals of Texas, Dallas.

June 10, 2010.

---

William W. Krueger III, Casey S. Erick, McKamie Krueger, LLP, Richardson, TX, for Appellant.

Houston M. Smith, Larry Roberts, Law Office of Houston M. Smith, P.C., Terrell, TX, Marquette William Wolf, Ted B. Lyon & Associates, Mesquite, TX, Ramona Martinez, Cobb, Martinez & Woodward, L.L.C., Dallas, TX, for Appellee.

Before Justices BRIDGES, FRANCIS and FILLMORE.

## OPINION

Opinion By Justice FILLMORE.

Appellee Diana Hall Austin, Individually, and as Administratrix of the Estate of Jimmy Wayne Hall, Deceased, sued appellant the City of Balch Springs, Texas on claims arising from the death of Jimmy Wayne Hall. The City filed a plea to the jurisdiction based on governmental immunity. The trial court denied the plea, and the City perfected this interlocutory appeal. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon 2008). We conclude that Austin's claims against the City are barred by governmental immunity. Accordingly, we reverse the trial court's order denying the City's plea to the jurisdiction and render judgment dismissing Austin's claims against the City for lack of subject matter jurisdiction.

### Procedural Background

The suit arises from a vehicular accident that resulted in a fatality. At the time of the accident, off-duty City police officer Jonathan Allen Purifoy was driving a City police department vehicle. Purifoy was returning from the City police station to the location of his part-time security job at Wal-Mart Stores, LLC.[1] Hall was driving a riding lawn mower with a trailer in tow on Balch Springs Road when struck from behind by the City police department vehicle. Hall died following the accident.

---

1. Purifoy is not a party to the lawsuit.

Austin sued the City and Wal–Mart. The City filed a plea to the jurisdiction asserting governmental immunity from suit.[2] The trial court denied the City's plea. This interlocutory appeal followed.

## Standard and Scope of Review

 Governmental immunity from suit defeats a trial court's subject matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 225–26 (Tex.2004). Whether a court has subject matter jurisdiction and whether a plaintiff has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction are questions of law. *Id.* at 226; *Perez v. City of Dallas,* 180 S.W.3d 906, 909 (Tex.App.-Dallas 2005, no pet.). Accordingly, we review de novo a challenge to the trial court's subject matter jurisdiction. *Miranda,* 133 S.W.3d at 226; *Perez,* 180 S.W.3d at 909.

 The purpose of a plea to the jurisdiction is to defeat a cause of action without regard to whether the claims asserted have merit. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex. 2000). The plaintiff has the burden to plead facts affirmatively showing the trial court has jurisdiction. *Miranda,* 133 S.W.3d at 226. In determining whether the plaintiff has met this burden, we look to the allegations in the pleadings, accept them as true, and construe them in favor of the pleader. *Id.* We also may consider evidence presented to the trial court to resolve the jurisdictional dispute, and we must do so when necessary to resolve the jurisdictional issues. *Bland Indep. Sch.*

*Dist.,* 34 S.W.3d at 554. In reviewing the plea to the jurisdiction where evidence is submitted that implicates the merits of the case, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Miranda,* 133 S.W.3d at 227–28. This standard generally mirrors our summary judgment standard under Texas Rule of Civil Procedure 166a(c), and the burden is on the governmental unit as movant to meet the standard of proof. *Id.* at 228. After the governmental unit asserts and provides evidentiary support for its plea, the nonmovant is required to show only that a disputed material fact issue exists regarding the jurisdictional issue. *Id.; City of Dallas v. Heard,* 252 S.W.3d 98, 102 (Tex. App.-Dallas 2008, pet. denied).

## Allegations and Evidence

Given the procedural posture of this case, we consider the allegations of fact in Austin's live pleading and the evidence presented to the trial court by the City and Austin in connection with the City's plea to the jurisdiction.

Purifoy was a police officer employed by the City. Subject to restrictions, and with the approval of the City, off-duty police officers were permitted to undertake part-time employment with private employers. Purifoy was a part-time employee of Wal–Mart and provided security-related services at a retail store location. While working for Wal–Mart, Purifoy was compensated by Wal–Mart, not by the City.

---

**2.** The terms "sovereign immunity" and "governmental immunity" are often used interchangeably. The supreme court, however, has distinguished the terms, stating that sovereign immunity protects the State and the various divisions of State government from suit and liability, while governmental immunity protects political subdivisions of the State, including counties, cities, and school districts. *See Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 694 n. 3 (Tex.2003). Therefore, we analyze the City's issues in the context of governmental immunity.

On January 25, 2006, Purifoy was off-duty as a City police officer and clocked in at Wal–Mart to begin his shift as a part-time security employee. Purifoy was armed, wearing his City police uniform, and carrying his police badge. Off-duty police officers were permitted by the City to check out City patrol vehicle 501 (Unit 501), subject to availability, and park it at their off-duty job locations as a visible deterrent to criminal activity. Unit 501 was a 1994 Ford Crown Victoria. Purifoy observed that Unit 501 had not been left at the Wal–Mart location by a security employee on a prior shift, and Purifoy indicated to his Wal–Mart supervisor that he intended to drive to the City police station, check out Unit 501, and return to the Wal–Mart store location. The Wal–Mart manager approved. Purifoy did not clock out when he left the Wal–Mart store location to retrieve Unit 501.

Purifoy went to the City police station and obtained permission to use Unit 501. He completed a vehicle inspection form and left that form at the police station. In connection with obtaining Unit 501, Purifoy provided the police department dispatcher with his officer's identification number, making Purifoy eligible to be called from his private work for Wal–Mart and dispatched by the City in the event of an emergency situation. After leaving the police station in Unit 501, Purifoy drove to a Sonic drive-in restaurant for a drink. From the Sonic, he was returning to the Wal–Mart location via Balch Springs Road, an unmarked, unlit two-lane roadway. When Purifoy observed Hall riding the lawn mower with trailer in tow on the roadway, he applied the brakes and unsuccessfully attempted to swerve to avoid the collision. At the time of the collision, Purifoy was traveling in excess of the posted speed limit but was not responding to any criminal activity or otherwise driving at the direction of the City.

## Discussion

■ Governmental immunity protects political subdivisions of the State, including cities, from suit and liability. *See Harris County v. Sykes,* 136 S.W.3d 635, 638 (Tex. 2004); *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 694 & n. 3 (Tex.2003); *see also* Tex. Civ. Prac. & Rem.Code Ann. § 101.001(3)(B) (Vernon 2005) (defining "governmental unit" to include political subdivisions of the state, including cities). The Legislature, however, created a limited waiver of a city's immunity from suit for certain tort claims under the Texas Tort Claims Act (the Act). *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.025(a) (Vernon 2005); *State v. Shumake,* 199 S.W.3d 279, 283 (Tex.2006). The Act permits suits against governmental units in the following circumstances: under section 101.021(1), injury caused by the operation or use of a publicly-owned motor-driven vehicle or piece of equipment by a city's employee in the scope of his employment; and, under section 101.021(2), injury caused by a condition or use of tangible personal or real property. Tex. Civ. Prac. & Rem.Code Ann. §§ 101.021(1)(A) & (2) (Vernon 2005).

■ In its first, third, and fifth issues, the City contends there has been no waiver of its immunity from suit, and it has no vicarious liability for alleged acts or omissions of Purifoy, because Purifoy was not in the scope of his employment with the City at the time of the accident. Austin asserts the City's governmental immunity is waived pursuant to section 101.021(1) of the Act, because Purifoy was operating a City-owned vehicle and was in the scope of his City employment at the time of the accident. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 101.002 (Vernon 2005) & 101.021.

Austin's live pleading alleges that at the time of the accident, Purifoy was in the

course and scope of his employment with Wal–Mart, was performing duties for the private benefit of Wal–Mart, and was not performing a job incident to enforcement of the public laws. However, Austin argues the City's Police Department General Order paragraph 4.02.05 entitled "Responsibilities and General Conduct" mandates that a City police officer is "on-duty" twenty-four hours a day while within the City, and hence Purifoy was acting within the scope of his employment at the time of the accident. In pertinent part, paragraph 4.02.05 provides:

> A. For the purpose of protecting life and property, officers shall always be prepared to act any time circumstances indicate their services are required. Officers are always considered on duty while in the City of Balch Springs.

■ "It is the duty of every peace officer to preserve the peace within the officer's jurisdiction." Tex.Code Crim. Proc. Ann. art. 2.13(a) (Vernon 2005); *see also, Mansfield v. C.F. Bent Tree Apartment, L.P.,* 37 S.W.3d 145, 151 (Tex.App.-Austin 2001, no pet.). Peace officers are not relieved of this obligation because they are off-duty. If an off-duty officer observes and responds to a crime, he becomes an on-duty officer. *See Hafdahl v. State,* 805 S.W.2d 396, 401 (Tex.Crim.App. 1990), *overruled on other grounds by Madden v. State,* 799 S.W.2d 683, 686 n. 3 (Tex.Crim.App.1990); *City of Dallas v. Half Price Books, Records, Magazines, Inc.,* 883 S.W.2d 374, 377 (Tex.App.-Dallas 1994, no writ) (when off-duty police officer saw crime being committed, he ceased being employee or independent contractor of private employer for which he was providing off-duty security and immediately became on-duty police officer).

■ However, the fact that an off-duty police officer is subject to being called to service twenty-four hours a day while within the City does not mean he is acting within the scope of government employment at all times while off-duty. "[I]t is a well-established principle that merely because an employee is on-duty, or on-call twenty-four hours a day, does not mean that the person is always acting within the scope of his employment." *City of Laredo v. Saenz,* No. 04–05–00188–CV, 2006 WL 286006, at *3 (Tex.App.-San Antonio Feb. 8, 2006, no pet.) (mem. op.) (citing *Banfield v. City of San Antonio,* 801 S.W.2d 134, 137 (Tex.App.-San Antonio 1990, no writ)). "[E]ven where an employee is on call 24 hours a day he must be engaged in or about the furtherance of the affairs or business of his employer to be in the scope of his employment." *Garcia v. City of Houston,* 799 S.W.2d 496, 499 (Tex.App.-El Paso 1990, writ denied). The Act defines an "employee" as "a person, including an officer or agent, who is in the paid service of a governmental unit" and the "scope of employment" as "the performance for a governmental unit of the duties of an employee's office or employment and includes being in and about the performance of a task lawfully assigned to an employee by competent authority. . . ." Tex. Civ. Prac. & Rem.Code Ann. § 101.001(2). In general, whether a person is acting within the scope of his employment depends on whether the general act from which an injury arose was in furtherance of the employer's business and for the accomplishment of the objective for which the employee was employed. *Leadon v. Kimbrough Bros. Lumber Co.,* 484 S.W.2d 567, 569 (Tex.1972). In short, an employee is not acting within the scope of his duties unless the activity has some connection with, and is being undertaken in furtherance of, the employer's business. *Biggs v. U.S. Fire Ins. Co.,* 611 S.W.2d 624, 627 (Tex.1981); *Vernon v. City of Dallas,* 638

S.W.2d 5, 8–9 (Tex.App.-Dallas 1982, writ ref'd n.r.e.).

 In determining whether a police officer is acting within the scope of his employment, it is necessary to consider whether the officer is discharging a duty generally assigned to him by his government employer. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 658 (Tex.1994); *see also Harris County v. Gibbons,* 150 S.W.3d 877, 882 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (whether police officer is acting within scope of employment is generally tied to officer's duty under the law). Even in a case where a police officer is off duty, law enforcement responsibilities may trigger a change in status from off-duty to on-duty. *See Morris v. State,* 523 S.W.2d 417, 418 (Tex.Crim.App.1975) (off-duty officer can still be engaged in lawful discharge of his law enforcement duties); *Wood v. State,* 486 S.W.2d 771, 774 (Tex.Crim.App.1972) ("It is the law in this state that a police officer's 'off-duty' status is not a limitation upon the discharge of police authority in the presence of criminal activity."). When determining the status of an officer, we must ask "in what capacity was the officer acting at the time he committed the acts for which the complaint was made?" *C.F. Bent Tree Apartment, L.P.,* 37 S.W.3d at 150–51 (quoting *Blackwell v. Harris County,* 909 S.W.2d 135, 139 (Tex.App.-Houston [14th Dist.] 1995, writ denied)) (police officer resident of apartments where he performed off-duty security patrols was acting in capacity as police officer by arresting trespasser); *see, e.g., Brown v. Dillard's, Inc.,* 289 S.W.3d 340, 344 (Tex.App.-Eastland 2009, no pet.) (off-duty police officer working part-time for store as security was acting as on-duty officer when responding to crime information that suspect was engaged in burglary of vehicle in parking lot); *Saenz,* 2006 WL 286006, at *4–5 (off-duty officer driving city-issued truck not in scope of employment with city at time of accident where more than six hours had passed since officer completed his assignment, he was not responding to any calls at time of accident and had not observed criminal activity); *Gibbons,* 150 S.W.3d at 882 (actions of off-duty deputy driving patrol car were in capacity as peace officer when at time of accident, deputy was using on-board computer for results of license plate check performed based on suspicion of a stolen vehicle).

Jack Gilbert, the City's Chief of Police at the time of the accident, testified concerning the application of Police Department General Order paragraph 4.02.05. Gilbert indicated that a police officer within the City must always be prepared to respond to an emergency and to take action concerning the enforcement of the law. Gilbert further testified that Purifoy was not acting in his capacity as a City police officer at the time of the accident, noting Purifoy was not responding to a crime. Gilbert's testimony is consistent with the plain meaning of the language used by the City in paragraph 4.02.05. A police officer employed by the City must always, whether on duty or off duty within the City, be prepared to act to protect the life and property of City residents. However, the language of paragraph 4.02.05 does not suggest an off-duty police officer acts within the scope of his City employment when engaged in activities other than law enforcement responsibilities assigned to him by the City.

Accordingly, we disagree with Austin's contention that, pursuant to paragraph 4.02.05, Purifoy was acting within the scope of his City employment at the time of the accident merely because he remained within the city limits. The reference in paragraph 4.02.05 to police officers always being considered on duty while in

the City is consistent with applicable statutory and case law. Paragraph 4.02.05, however, does not control the question of whether Purifoy was acting within the scope of his employment by the City at the time of the accident. We consider the capacity in which the officer was acting at the time he committed the acts that are subject of the complaint. At the time of the accident, Purifoy was returning to the location of his private, off-duty employment. He had not been contacted by the police dispatcher to respond to a call or to engage in his official police officer duties, he was not responding to an emergency, such as a citizen in need of assistance, and he was not engaged in a law enforcement duty of preserving the peace. At the time of Purifoy's acts complained of, he was acting in his off-duty capacity of providing security for a private employer.

█ We also disagree with Austin's alternative pleading that at the time of the accident, Purifoy was performing a task of crime deterrence that was "lawfully assigned to him by [the City]" when he obtained Unit 501, "assigned" by the City to be used at Wal–Mart, from the City's police department. At the time of the accident, Purifoy was returning to his place of off-duty private employment. He was not operating in his capacity as a City police officer during his return travel to his off-duty job site at Wal–Mart. *See Gibbons*, 150 S.W.3d at 882 (because police officer is in a patrol car does not necessarily mean officer is on-duty). Moreover, while having a patrol vehicle parked at a business within the City may have some benefit to the public generally as a visible deterrent against criminal activity, the City did not require Purifoy, in his capacity as an off-duty security employee of Wal–Mart, to obtain Unit 501 and park the marked unit at the retail location of the private employer. Rather, the City permitted Unit 501 to be parked at the retail location, subject to its availability. In his capacity as an off-duty security employee, Purifoy obtained Unit 501 for the purpose of enhancing security by deterring criminal activity on the premises of his private employer.

The City produced evidence establishing that Purifoy was not acting within the scope of his employment for the City at the time of the accident. Therefore, the doctrine of respondeat superior is inapplicable to the City. Austin's claim against the City for the alleged negligence of Purifoy is barred by the doctrine of governmental immunity. We sustain the City's first, third, and fifth issues.

█ In its second issue, the City asserts it has not waived its governmental immunity because no condition of Unit 501 caused the accident in question. Austin responds that the City's governmental immunity has been waived because her pleadings allege conditions of the patrol vehicle caused the accident resulting in Hall's death. Specifically, Austin's pleading alleges and she argues in her appellate brief that Unit 501's odometer and speedometer were inoperable, causing Purifoy to travel at an excessive rate of speed and the accident at issue.

█ Section 101.021(2) provides that a governmental unit is liable for:

> personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Tex. Civ. Prac. & Rem.Code Ann. § 101.021(2). This provision waives governmental immunity for a claim of personal injury or death based upon a condition of tangible personal property if the governmental unit would, were it a private person, be liable to the claimant. *See Ra-*

mos v. City of San Antonio, 974 S.W.2d 112, 116 (Tex.App.-San Antonio 1998, no pet.) (police car is tangible personal property).

Texas courts have consistently required a nexus between the condition or use of the property and the injury or death. Dallas Area Rapid Transit v. Whitley, 104 S.W.3d 540, 543 (Tex.2003); Tex. Dep't of Criminal Justice v. Miller, 51 S.W.3d 583, 588 (Tex.2001); Dallas County Mental Health & Mental Retardation v. Bossley, 968 S.W.2d 339, 342–43 (Tex.1998). This nexus requires more than mere involvement of property; rather, the condition or use must actually have caused the injury. Id. at 343. Property does not cause injury if it does no more than furnish the condition that makes the injury possible. Miller, 51 S.W.3d at 588; Bossley, 968 S.W.2d at 343.

The testimony of the City's mechanic, Jason Thomas, is uncontroverted that the speedometer on Unit 501 was working properly at the time of the accident. Thomas testified that his mechanic duties included preventative maintenance and repair of the City's vehicles and tractors. Preventative maintenance is performed on the City's vehicles every three thousand miles or three months, whichever comes first. Therefore, even with the odometer failing to record the mileage on Unit 501 to trigger maintenance at increments of 3,000 miles, preventative maintenance was performed at least every three months on Unit 501. If a problem was identified with a vehicle during preventative maintenance, the vehicle was either repaired or taken out of service. Thomas testified that he drove City vehicles in the process of performing maintenance and during test drives would observe the speedometer for functionality. Although the evidence established that Unit 501's odometer was not functional at the time of the accident, there is no evidence that the patrol vehicle's speedometer was not functioning properly. Thomas testified that on 1994 Crown Victorias such as Unit 501, the odometer and speedometer are not linked and function independently. The speedometer operates through a cable to the transmission. The odometer operates through a sensor linked to a computer chip. Therefore, even though Unit 501's odometer was not functioning at the time of the accident, there is no evidence the speedometer was not functioning.

Austin's allegation and inference that a malfunctioning speedometer caused Purifoy to travel at an excessive rate of speed, resulting in the accident, must fail in light of the uncontroverted evidence to the contrary. Austin's claim against the City relating to the alleged defective condition of Unit 501 is barred by the doctrine of governmental immunity. We sustain the City's second issue.

Having concluded in our disposition of the City's first, second, third, and fifth issues that the City is entitled to dismissal of Austin's claims against it for lack of subject matter jurisdiction, it is not necessary to address the City's fourth, sixth, seventh, and eighth issues. See Tex.R.App. P. 47.1 (opinion need only address the issues "raised and necessary to final disposition of the appeal").

### Conclusion

We conclude the trial court erred in denying the City's plea to the jurisdiction. We reverse the trial court's order denying the City's plea to the jurisdiction and render judgment dismissing Austin's claims against the City for lack of subject matter jurisdiction.