**Opinion issued May 18, 2023**



In The

# Court of Appeals

For The

## First District of Texas

————————————

### NO. 01-22-00444-CV

————————————

**ALIEF INDEPENDENT SCHOOL DISTRICT, Appellant**

**V.**

**ANTHONY VELAZQUEZ, Appellee**

---

**On Appeal from the 80th District Court**
**Harris County, Texas**
**Trial Court Case No. 2021-42160**

---

## MEMORANDUM OPINION

Appellee Anthony Velazquez was severely injured when Chinyere Iheagwam ("Iheagwam"), a former employee of Appellant Alief Independent School District ("AISD"), struck him with her car. Appellee sued AISD for negligence and gross negligence, asserting the district was liable under the Texas

Tort Claims Act because Iheagwam was employed by AISD and "operating and using a motor-driven vehicle in the course and scope of her employment" when the accident occurred. AISD filed a Plea to the Jurisdiction arguing it was entitled to governmental immunity because at the time of the accident, Iheagwam was acting outside the scope of her employment. The trial court denied AISD's plea. This appeal ensued.

In one issue, AISD argues the trial court erred in denying its Plea to the Jurisdiction because it established Iheagwam was acting outside the scope of her employment when the accident occurred. Thus, AISD argues, the Texas Tort Claims Act's waiver of immunity is inapplicable and AISD is entitled to governmental immunity.

We reverse and render.

## Background

This lawsuit arises from a tragic motor vehicle accident involving Appellee Anthony Velazquez ("Velazquez"), a high school student at Alief Hastings High School, and Iheagwam, a former AISD cafeteria worker. On October 23, 2019, Iheagwam was working in the cafeteria at Alief Hastings High School. After concluding her cafeteria shift, Iheagwam got into her personal car to drive from Alief Hastings High School's ninth grade building to AISD's administrative block, where, according to Iheagwam, she intended to ask some questions about her

2

AISD-issued health insurance. At approximately 2:42 p.m., as she was driving to AISD's administrative building, Iheagwam struck Velazquez with her car. Velazquez was walking across the street with friends when Iheagwam struck him. According to Velazquez's pleadings, the impact flipped Velazquez into the air, dropped him to the pavement, and left him unconscious with a skull fracture and traumatic brain injury. Velazquez, who has since had multiple brain surgeries, has "significant physical and cognitive impairment," and had to relearn to "walk, eat, and function."

Police were dispatched to the scene of the accident. Iheagwam's manager[1] also called Iheagwam and discussed the accident with her while she was still at the scene of the accident. According to the police report, Iheagwam was charged with aggravated assault with a deadly weapon. During Iheagwam's deposition in this case, she testified she pleaded guilty to assault with serious bodily injury. She also testified that AISD terminated her employment on October 28, 2019 as a result of the accident.

Velazquez sued AISD for negligence and gross negligence. He alleged the trial court had jurisdiction over his claims under Sections 101.021(1) and 101.025 of the Texas Tort Claims Act ("TTCA") because Iheagwam was an AISD employee who "was operating and using a motor-driven vehicle in the course and

---

[1]     Iheagwam first testified in her deposition that her manager was named Chris but subsequently said her manager, Trace Caesar, called her about the accident.

scope of her employment" when the accident occurred. According to Velazquez, Iheagwam "was driving between campus buildings to complete tasks and activities for which she was hired and paid, and she was acting in furtherance of Alief ISD's objectives and the objectives for which she was hired" at the time of the accident. Velazquez alleged that AISD was subject to a waiver of immunity from suit under Sections 101.021(1) and 101.025 of the TTCA.

AISD filed a general denial asserting governmental immunity and lack of subject-matter jurisdiction, among other defenses. AISD then filed a Plea to the Jurisdiction ("Plea") asserting that the TTCA's "limited waiver of immunity does not waive AISD's immunity here because, at the time of the accident, AISD's employee was outside the scope of her employment." In support of its Plea, AISD submitted Iheagwam's job description and a letter from AISD's insurer denying Velazquez's claim because Iheagwam was not driving an AISD vehicle when the accident occurred.

AISD also attached to its Plea the affidavit of Heather Hayes-Ramirez ("Hayes-Ramirez"), AISD's Director of Nutrition. Hayes-Ramirez testified that she oversees AISD department employees, including cafeteria workers, and further averred that:

> Ms. Iheagwam was not acting in the course and scope of her duties at
> AISD when the collision occurred.

4

Ms. Iheagwam was never directed or requested by anyone at the District to report to any AISD office, facility, or destination after her shift ended at 2:30 p.m. on October 23, 2019. Ms. Iheagwam clocked out at 2:30 p.m. on October 23, 2019, and that was the end of any duty for her day for AISD. . . .

Ms. Iheagwam was not acting in her capacity as a cafeteria worker and she was not performing duties pursuant to her job at the District at the time of the collision which is the subject of the instant lawsuit. She was doing nothing to benefit or for the benefit of AISD at the time of the collision.

Attached to Hayes-Ramirez's affidavit was Iheagwam's payroll sheet and time clock record for the period of October 19 to October 25, 2019 ("Payroll Record"). The Payroll Record contains separate columns for "Date In," "Time In," "Actual In," "Time Out," and "Actual Out" entries. The Payroll Record also has a separate column for "Day Total," reflecting the total hours worked each day. For October 23, 2019, the date of the accident, the Payroll Record reflects that Iheagwam's "Time In" was 8 a.m., and her "Actual In" was at 7:55 a.m. Her next "Time Out" was 9:30 a.m., and her "Actual Out" was 9:35 a.m.. Her next "Time In" was 10 a.m., and her "Actual In" was at 10:05 a.m. And her last "Time Out" was 2:30 p.m., but there is no entry for her last "Actual Out."[2] Under the "Day Total" column, the Payroll Record indicates that Iheagwam worked 6 hours on October 23, 2019, and every other day that work week. The Payroll Record reflects the

---

[2] Hayes-Ramirez's affidavit statement that Ms. Iheagwam "clocked out" at 2:30 p.m. on October 23, 2019 is not reflected in the Payroll Record. As noted, the Payroll Record does not reflect Iheagwam's last "Actual Out" time.

following:[3]

**Complete Payroll**
For the period of 10/19/2019 to 10/25/2019

Name: IHEAGWAM, CHINYERE I.   Number: 148520   Export Code: 148520   Department: N008

| Week | Edit | Date In | Time In | Actual In | Date Out | Time Out | Actual Out | Job Code | Hours | Reg | Ovt2 Comp OT2 | | Day Total |
|------|------|---------|---------|-----------|----------|----------|-----------|----------|-------|-----|------|------|-----------|
| 1 | | [ Mon 10/21 | 8:00 AM | 7:56 AM | 10/21 | 9:45 AM | 9:42 AM | 675-NUTR SP | 1:45 | 1:45 | 0:00 | 0:00 | |
| | | [ Mon 10/21 | 10:15 AM | 10:10 AM | 10/21 | 2:30 PM | — | 675-NUTR SP | 4:15 | 4:15 | 0:00 | 0:00 | 6:00 |
| | | [ Tue 10/22 | 8:00 AM | 7:55 AM | 10/22 | 9:45 AM | — | 675-NUTR SP | 1:45 | 1:45 | 0:00 | 0:00 | |
| | | [ Tue 10/22 | 10:15 AM | — | 10/22 | 2:30 PM | — | 675-NUTR SP | 4:15 | 4:15 | 0:00 | 0:00 | 6:00 |
| | | [ We 10/23 | 8:00 AM | 7:55 AM | 10/23 | 9:30 AM | 9:35 AM | 675-NUTR SP | 1:30 | 1:30 | 0:00 | 0:00 | |
| | | [ We 10/23 | 10:00 AM | 10:05 AM | 10/23 | 2:30 PM | — | 675-NUTR SP | 4:30 | 4:30 | 0:00 | 0:00 | 6:00 |
| | X | [ Thu 10/24 sick | 9:00 AM | — | — | — | — | 3810-Illness-S | 6:00 | 6:00 | 0:00 | 0:00 | 6:00 |
| | X | [ Fri 10/25 sick | 9:00 AM | — | — | — | — | 3810-Illness-S | 6:00 | 6:00 | 0:00 | 0:00 | 6:00 |
| | | | | | | | | Week 1 Totals: | 30:00 | 30:00 | 0:00 | 0:00 | 30:00 |
| | | | | | | | | Period Totals: | 30:00 | 30:00 | 0:00 | 0:00 | 30:00 |

Velazquez filed a response to the Plea, asserting the TTCA's waiver of immunity applies because at the time of the accident, Iheagwam was "traveling between two AISD locations so she could complete paperwork connected with her employment." Velazquez argued that Iheagwam was "driving her car at nearly twice the speed limit" when she struck Velazquez and that one of the news reports of the accident stated "she was rushing to get to another building on campus in order to do something with paperwork."[4] Velazquez argued that the Payroll Record attached to Hayes-Ramirez's affidavit suggests that Iheagwam was "on the clock" and in the course and scope of her employment when the accident occurred

---

[3] For October 24 and 25, 2019, the Payroll Record reflects that 6 hours were allocated to Iheagwam each day for "3810-Illness-S," for a total work week of 30 hours.

[4] Velazquez concedes the news reports are hearsay.

because she "never clocked out, because she had the crash while she was still on duty on her way to complete her paperwork."

Velazquez objected to Hayes-Ramirez's affidavit, asserting it did not explain how she had personal knowledge of the facts to which she testified. Velazquez also questioned the veracity of the Payroll Record attached to the affidavit, claiming the record demonstrates "that Iheagwam was scheduled to work until 2:30, but had not yet clocked out at the time of the crash." At most, Velazquez contended, AISD's evidence raised a fact issue as to whether Iheagwam was "on the clock" at the time of the crash.

The trial court conducted an oral hearing on the Plea and granted Velazquez a continuance of thirty days to conduct limited and targeted jurisdictional discovery.[5] Subsequently, AISD filed a First Amended Plea to the Jurisdiction ("Amended Plea") asserting the same arguments but attaching additional exhibits. The exhibits to the Amended Plea included the AISD Nutrition Employee Handbook, the Payroll Record, Iheagwam's job description, and a brief excerpt of Iheagwam's video deposition. Also attached to the Amended Plea was a new affidavit from Hayes-Ramirez, who averred that Iheagwam's work shift ended at 2:30 p.m. on October 23, 2019, and not, as her first affidavit stated, that she clocked out at that time. The amended Hayes-Ramirez affidavit states in part:

---

[5] The transcript of the hearing is not in the record.

> Ms. Iheagwam was not acting in the course and scope of her duties at AISD when the collision occurred as her duty day ended before the accident occurred.
>
> As a cafeteria worker, Ms. Iheagwam's duties are specifically outlined in the Nutrition Employee Handbook. . . . Employees are not to remain in a school after clocking out or when not scheduled to work unless approved by a supervisor[.] A cafeteria worker can be reimbursed for mileage from school to school if they clock in and later the employee is needed to go to another school because of staff shortages[.] This was not the case for Ms. Iheagwam on October 23, 2019.
>
> Ms. Iheagwam was never directed or requested by anyone at the District to report to any AISD office, facility, or destination after her shift ended at 2:30 p.m. on October 23, 2019.
>
> Any activities that Ms. Iheagwam performed after the end of her duty at 2:30 p.m. were not within the course and scope of her employment at AISD and were of a personal nature.
>
> Ms. Iheagwam's duties ended at 2:30 p.m. on October 23, 2019, and that was the end of any duty for her day for AISD. . . .
>
> Ms. Iheagwam was not acting in her capacity as a cafeteria worker and she was not performing duties pursuant to her job at the District at the time of the collision which is the subject of the instant lawsuit. She was doing nothing to benefit or for the benefit of AISD at the time of the collision.

The Amended Plea was set for submission. Velazquez filed a response to the Amended Plea, providing references to Iheagwam's deposition in support of his argument that Iheagwam was acting within the course and scope of her employment when the accident occurred at 2:42 p.m. on October 23, 2019.

The trial court denied the Amended Plea. This interlocutory appeal followed.[6]

**Discussion**

In a single issue, AISD challenges the trial court's denial of its Amended Plea. AISD argues that, as a governmental entity, it is immune from suit "on any claim that does not trigger a clear and unambiguous statutory waiver of immunity." AISD asserts that the only potentially "applicable waiver of immunity from suit in this case is governed by the [TTCA]—which only applies when a government employee is operating a motor vehicle *and* acting within the scope of their employment. AISD argues that such waiver of immunity does not apply here because while Iheagwam was a government employee, she was not acting within the scope of that employment when the accident occurred. AISD further asserts that Velazquez did not establish the trial court's jurisdiction or satisfy his "heavy" burden to negate the jurisdictional facts pleaded by AISD.[7]

---

[6] *See* TEX. CIV PRAC. & REM. CODE § 51.014(a)(8) (stating that an interlocutory appeal may be made from an order granting or denying a plea to the jurisdiction by a governmental unit).

[7] Texas governmental units are entitled to a "heavy presumption" in favor of immunity. *Lara v. City of Hempstead*, No. 01-15-00987-CV, 2016 WL 3964794, at *3 (Tex. App.—Houston [1st Dist.] July 21, 2016, pet. denied) (mem. op.) (citing *City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex. 2007)).

9

## A.    Standard of Review

Subject matter jurisdiction is implicit in a court's power to decide a case. *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013). To establish subject matter jurisdiction, the plaintiff must allege facts that demonstrate affirmatively the court's jurisdiction to hear his claims. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). The determination of whether a court has subject matter jurisdiction is a question of law. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

A plea to the jurisdiction "is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction." *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *TitleMax of Tex., Inc. v. City of Austin*, 639 S.W.3d 240, 245 (Tex. App.—Houston [1st Dist.] 2021, no pet.). Our review of a plea to the jurisdiction is de novo and mirrors the standard of review of a traditional motion for summary judgment. *Miranda*, 133 S.W.3d at 226; *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). In our review, we "take as true all evidence favorable to the nonmovant" and "indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Miranda*, 133 S.W.3d at 228.

"[A] court deciding a plea to the jurisdiction . . . may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). We may consider

10

evidence necessary to resolve a dispute over jurisdictional facts even if the undisputed evidence "implicates both the subject matter jurisdiction of the court and the merits of the case." *Miranda*, 133 S.W.3d at 226. If the defendant meets its burden to establish the trial court lacks jurisdiction, the burden shifts to the plaintiff, who then must show there is a question of material fact as to the jurisdictional issue. *Garcia*, 372 S.W.3d at 635. If the evidence raises a fact issue concerning jurisdiction, the plea cannot be granted, and the fact finder must resolve the issue. *Id.* If, on the other hand, the evidence is undisputed or does not raise a fact issue, the plea must be determined as a matter of law. *Id.*

## B.     The Texas Tort Claims Act

Governmental immunity protects the state's political subdivisions, such as counties, cities, and school districts. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003); *Democratic Sch. Research, Inc. v. Rock*, 608 S.W.3d 290, 306 (Tex. App.—Houston [1st Dist.] 2020, no pet.). A plaintiff who sues a political subdivision of the state must establish that the state consented to suit. *KIPP Tex., Inc. v. Doe #1*, 649 S.W.3d 850, 853 (Tex. App.—Houston [1st Dist.] 2022, no pet.). In the absence of such a showing, governmental immunity deprives the trial court of subject-matter jurisdiction. *Id.*

A party who sues a governmental entity must establish jurisdiction by pleading and proving a valid immunity waiver and a claim that falls within the

11

waiver.  *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 135 (Tex. 2015); *Tex. Dep't of Crim. Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001).  Courts of appeals "interpret statutory waivers of immunity narrowly, as the Legislature's intent to waive immunity must be clear and unambiguous."  *Garcia*, 253 S.W.3d at 655 (citing TEX. GOV'T CODE § 311.034).  It is well-settled that "any purported statutory waiver of sovereign immunity should be strictly construed in favor of retention of immunity."  *PHI, Inc. v. Tex. Juv. Just. Dep't*, 593 S.W.3d 296, 303 (Tex. 2019) (quoting *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 513 (Tex. 2012)).

The TTCA provides a limited waiver of immunity for certain suits against governmental entities.  *See* TEX. CIV. PRAC. & REM. CODE § 101.021; *see also Miranda*, 133 S.W.3d at 224.  In this case, Velazquez alleged that AISD is subject to a waiver of immunity from suit under Sections 101.021(1) and 101.025 of the TTCA.  Section 101.021(1) of the TTCA states that a governmental unit of the state is liable for property damage and personal injury "proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment" if the damage or injury "arises from the operation or use of a motor-driven vehicle" and "the employee would be personally liable to the

12

claimant according to Texas law[.]"[8]  TEX. CIV. PRAC. & REM. CODE § 101.021(1).

And Section 101.025 provides that "[s]overeign immunity to suit is waived and

abolished to the extent of liability created by this chapter," and that one who has a

claim under this chapter "may sue a governmental unit for damages allowed by this

chapter." *Id.* § 101.025.

**C.    Analysis**

In its sole issue, AISD contends the trial court erred in denying its Amended

Plea because Iheagwam was not acting within the scope of her employment when

she struck Velazquez with her car.  AISD states that Iheagwam's shift had ended

when the accident occurred at 2:42 p.m., and that she had not been told or

otherwise directed by AISD to drive to the administrative block to discuss her

benefits or complete paperwork after her shift ended.

Velazquez responds that the trial court properly denied the Amended Plea

because he presented evidence that at the time of the accident, "Iheagwam was on

the clock and traveling from one Alief ISD on-campus building to another" to

perform "administrative work relating to the health insurance benefits" AISD

provided her "as compensation for providing her job duties."  Velasquez contends

that "Iheagwam's trip from the high school cafeteria to the administrative block

---

[8]    The TTCA's waiver is narrow for school districts, encompassing only tort claims involving motor vehicles.  TEX. CIV. PRAC. & REM. CODE §101.051.

13

was connected with the performance of her job duties and was in furtherance" of AISD's business.

### 1. Iheagwam's deposition

In its response to AISD's Amended Plea, Velazquez attached excerpts from Iheagwam's deposition.[9] In response to questioning by Velazquez's counsel, Iheagwam testified that on the day of the accident, she was an AISD employee:

Q: And were you driving a car that hit a student that day?

A: Yes, sir.

Q: And on the day that this happened, who was your employer?

A: My employer was Alief ISD.

Q: To confirm, ma'am, on the day of this incident your employer was Alief Independent School District; is that correct?

A: Yes, sir.

Q: At the time that you hit the student were you wearing your Alief Independent School District green uniform?

A: Yes, sir.

As the deposition continued, Iheagwam testified that at the time of the accident, she was driving from the Alief Hastings High School ninth-grade building to AISD's administrative block on the same campus:

Q: Ms. Iheagwam, where were you going when the incident

---

[9] We do not have a full record of Iheagwam's deposition testimony. Only excerpts of her deposition are in the record.

happened?

A:    I was going to the administrative block.

. . .

Q:    Okay. And where were you coming from immediately before the wreck, ma'am?

A:    I'm coming from High Star.

Q:    What building on High Star were you coming from?

A:    I was coming from ninth grade – ninth grade.

Q:    Okay. So Ms. Iheagwam, just before the incident you were coming from the ninth grade building at Alief School District; is that correct?

A:    Yes, sir.

Q:    And that was located on High Star; is that correct?

A:    Yes, sir.

Q:    And you were driving to the Alief Independent School District Administrative Block; is that correct?

(Objection by AISD's counsel)

A:    Yes, sir.

Iheagwam testified that she was driving to the AISD administrative block to inquire about health "insurance [she] was enrolled for:"

Q:    Ms. Iheagwam, to confirm, at the time of the incident you were going to another part of the school to do administrative work; is that correct?

15

A: Yes, sir.

Q: And you were going to the Alief School District Administrative Block; is that correct?

A: Yes, sir.

Q: Who were you going to meet with at the administrative block?

A: I want to meet the person that give me the insurance to explain things for them and show them my card.

Q: You were going to meet with the people that do the health insurance for your job; is that correct?

A: Yes, sir.

Iheagwam testified that she was driving to the administrative block "in furtherance of" her job with AISD:

Q: And so you were going there in furtherance of your job with Alief, correct?

A: Yes, sir.

Q: And . . . [y]ou were a cafeteria worker at that time, correct?

A: Yes, sir.

Q: And as an Alief cafeteria worker you would get paid for your time, correct?

A: Yes, sir.

Q: In addition, you would also get benefits such as health insurance, correct?

A: Yes, sir.

16

Q: And so the purpose of your trip to the other part of the school was in relation to you getting health insurance with your job; is that correct?

A: Yes, sir.

Q: And that is part that was part of your compensation package, correct?

A: Yes, sir.

Q: And that health insurance was for your benefit but also for the school's benefit, correct?

A: Yes, sir.

Q: How long had your worked as a cafeteria worker?

A: For about one year.

. . .

Q: Okay and you were being provided health insurance from the school as part of your working as a cafeteria worker, correct?

A: Yes, sir.

Q: And so as part of your job you were going to the administrative block that day in relation to getting paid as a cafeteria worker, correct?

A: Yes, sir.

Iheagwam testified that when the police arrived at the accident scene, she told them that she was "going to the administrative block for [her] insurance" to ask questions about her insurance card. She testified that on October 23, 2019—the day of the accident—she clocked out at 2 p.m. Finally, Iheagwam testified that her

17

manager, Trace Caesar, called her the day of the accident to discuss what happened, and that five days later, AISD terminated her employment because of the accident:

Q: Did you fill out anything in writing for the school as to what happened?

A: No. When they called me – the school called me on the 28th [of October] . . . my husband [drove] me down to the school. They [brought] a form for me to sign. I said, "Why am I signing this?" . . . [S]he's saying that my job has been terminated. I say, "Why? Because of the accident I have?" They said, "Yes."

. . .

Q: Okay. . . . When you were with the police, Trace Caesar from Alief School District called you, correct?

A: Yes, sir.

Q: Okay. And then a few days later, is it correct that you got another phone call from the school?

A: Yes, sir.

Q: Who called you that time?

A: They called me from the teaching department.

. . .

Q: Okay. So someone from the administrative block department called you on October 28th?

A:. Yes, sir. Someone from the administrative block –

Q: Okay. But you don't – you don't remember her name?

18

A:    I don't remember her name.

Q:    Okay.  And that person asked you to come to the school?

A:    Yes, sir.

Q:    And did you go to the school?

A:    Yes, I went.

Q:    The same day?

A:    They gave me a day to come on 28th. . . . They give me something to sign.  I say, "Why am I signing this?" They said that I should sign it, my job is terminated.  So I say, "What? Because of the accident?"

Q:    Was the document that they gave you already filled out when they handed it . . . to you?

A:    Yes, they filled it out and handed it over to me to sign.

Q:    And you refused to sign that?

A:    I said, Why am I signing this?" They said, that I should sign it. I say, "is it because of the accident I have in the school zone?" They said, "Yes." [10]

## 2.    Scope of Employment

The TTCA broadly defines "scope of employment" as (1) "the performance for a governmental unit of the duties of an employee's office or employment," which (2) "includes being in or about the performance of a task lawfully assigned to an employee by competent authority." *Garza v. Harrison*, 574 S.W.3d 389, 400

---

[10]    AISD does not dispute that it terminated Iheagwam because of the accident.

19

(Tex. 2019) (citing TEX. CIV. PRAC. & REM. CODE § 101.001(5)). The Texas Supreme Court has looked to the Restatement (Third) of Agency to further explain the term: "An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer." *Elias v. Griffith*, No. 01-17-00333-CV, 2018 WL 3233587, at *6 (Tex. App.—Houston [1st Dist.] July 3, 2018, no pet.) (mem. op.) (citing *Alexander v. Walker*, 435 S.W.3d 789, 792 (Tex. 2014) (citing RESTATEMENT (THIRD) OF AGENCY § 7.07(2) (2006)). On the other hand, a governmental employee "acts within the scope of his employment when his act furthers his employer's business and is undertaken to accomplish an objective for which he is employed." *City of Houston v. Lal*, 605 S.W.3d 645, 649 (Tex. App.—Houston [1st Dist.] 2020, no pet.).

The key inquiry is whether, when viewed objectively, a connection exists "between the employee's job duties and the alleged tortious conduct." *Garza*, 574 S.W.3d at 401. "Simply stated, a governmental employee is discharging generally assigned job duties if the employee was doing his job at the time of the alleged tort." *Id.* The employee's state of mind, motives, and competency are irrelevant. *Id.* And conjecture as to whether the government employee was acting within the course and scope of her employment when committing the tort also carries no weight. "[S]peculation . . . is not enough to raise a fact issue as to whether [an

20

employee] was acting in the course and scope of her employment at the time of the collision." *City of Houston v. Carrizales*, No. 01-20-00699-CV, 2021 WL 3556216, at *6 (Tex. App.—Houston [1st Dist.] Aug. 12, 2021, pet. denied) (mem. op). "The scope-of-employment analysis . . . remains fundamentally objective: Is there a connection between the employee's job duties and the alleged tortious conduct?" *Laverie v. Wetherbe*, 517 S.W.3d 748, 753 (Tex. 2017).[11]

Generally, evidence that an employee was on a "personal errand" when an accident occurred "refutes an allegation that [she] was acting in the course and scope of [her] employment." *Molina v. City of Pasadena*, No. 14-17-00524-CV, 2018 WL 3977945, at *4 (Tex. App.—Houston [14th Dist.] Aug. 21, 2018, no pet.) (mem. op.) (citing *J & C Drilling Co. v. Salaiz*, 866 S.W.2d 632, 637 (Tex. App.—San Antonio 1993, no writ)). "An employee who has turned aside, even briefly, for a personal errand is no longer in the scope of employment until [she] returns to 'the path of duty.'" *Id.* (quoting *Sw. Dairy Products Co. v. De Frates*, 132 Tex. 556, 560, 125 S.W.2d 282, 284 (1939)); *see also City of Beaumont v. Stewart*, No. 09-12-00316-CV, 2012 WL 5364678, at *4 (Tex. App.—Beaumont Nov. 1, 2012,

---

[11]     The Supreme Court has explained that subjective intent is not "a necessary component of the scope-of-employment analysis. Rather, the TTCA focuses on 'performance . . . of the duties of an employee's office or employment,' which calls for an objective assessment of whether the employee was doing her job when she committed an alleged tort, not her state of mind when she was doing it." *Laverie v. Wetherbe*, 517 S.W.3d 748, 752–53 (Tex. 2017) (citing TEX. CIV. PRAC. & REM. CODE § 101.001(5)).

no pet.) (mem. op.) (observing in TTCA case that it is "well settled" in this state that "[w]hen an employee deviates from the performance of his duties as an employee for his own, personal purposes, his employer is neither responsible nor liable on a *respondeat superior* theory for what occurs during that deviation") (quoting *Drooker v. Saeilo Motors*, 756 S.W.2d 394, 397 (Tex. App.—Houston [1st Dist.] 1988, writ denied) (emphasis in original)).

### 3. Analysis

Velazquez argues that because the Payroll Record reflects that Iheagwam "never clocked out" on October 23, 2019, that raises an inference that the "crash [occurred] while she was on duty." While the last "Actual Out" entry in the Payroll Record is blank for October 23, 2019, that does not create an issue of material fact as to whether Iheagwam was on duty when the accident occurred. Whether or not Iheagwam physically clocked out on October 23, 2019, the undisputed testimony from Hayes-Ramirez is that Iheagwam's cafeteria shift ended at 2:30 p.m. that day. Thus, the evidence before the trial court established that Iheagwam was not on duty or being paid when the accident occurred at approximately 2:42 p.m.[12]

---

[12] The fact that Iheagwam apparently did not clock out on October 23, 2019 does not establish a fact issue as to whether she was on duty when the accident occurred. Iheagwam testified that she clocked out at 2 p.m., and AISD's Hayes-Ramirez testified that Iheagwam's duties for the district ended at 2:30 p.m. Thus, there is

22

There is also no evidence that Iheagwam was expected to return to work on October 23, 2019, or that AISD instructed her to drive anywhere or to complete any tasks after her cafeteria shift ended. On the contrary, the amended affidavit of Hayes-Ramirez established that Iheagwam's duties for AISD ended at 2:30 p.m. on October 23, 2019, and that she "was never directed or requested by anyone at the District to report to any AISD office, facility, or destination after her shift ended." Iheagwam's deposition excerpts did not dispute this testimony.

Iheagwam was driving her own car when the accident occurred. She testified that she was driving to AISD's administrative block building to ask questions about her insurance benefits when she struck Velazquez. The evidence established that AISD did not direct Iheagwam to go to the administrative building or any other AISD office or facility after her shift ended to meet with anyone about her insurance benefits. Iheagwam was not a new employee, and she was not on her way to complete her initial insurance paperwork. Instead, she testified she "want[ed] to meet the person that give me the insurance to explain things for them and show them my card."

AISD's involvement in the investigation of the accident and subsequent termination of Iheagwam are not relevant to our inquiry. The salient question is whether at the time of the accident, Iheagwam was acting within the scope of her

no evidence that Iheagwam was still on duty at 2:42 p.m. when the accident occurred. There is only evidence that she did not physically clock out on that day.

23

employment for AISD. *See Garza*, 574 S.W.3d at 400 ("[T]he critical inquiry is whether, when viewed objectively, "a connection [exists] between the employee's job duties and the alleged tortious conduct.") (citing *Laverie*, 517 S.W.3d at 753). Nor do we believe the proximity between Alief Hastings High School's ninth-grade building from which Iheagwam was leaving and the administrative block to which she was driving factors into the analysis.[13]

Velazquez argues that because Iheagwam was traveling to the administrative block to inquire about her health insurance benefits, Iheagwam was in the scope of her employment when the accident occurred. He argues that the health insurance AISD offers to its employees as part of its compensation package "helps employers attract and retain employees" and "helps keep the employer's workforce healthy, thereby reducing absenteeism." He contends that "the administrative aspects of employee compensation benefit Alief ISD and fall with the scope of its employee's employment." Thus, according to Velazquez, Iheagwam's trip "to the administrative block to perform administrative work relating to her health-insurance benefits was in the scope of her employment because Alief ISD would realize a benefit from that conduct." We are not persuaded by Velazquez's arguments. While the provision of health insurance benefits may attract employees and reduce absenteeism, that is not relevant to our scope-of-work analysis. "The

---

[13]    That is, the fact that the administrative block and the ninth grade building were on the same campus is irrelevant for purposes of our analysis.

key question in a case like this one [] is whether, when viewed objectively, there [is] a connection between the [tortfeasor's] job duties and his allegedly tortious act." *Lal*, 605 S.W.3d at 649.

Velazquez relies on three cases for the proposition that because AISD would realize "a benefit" from Iheagwam's visit to the administrative block to discuss her health-insurance benefits, she was acting within the scope of her employment when the accident occurred. He relies first on *City of Eagle Pass v. Luna*, No. 04-05-00744-CV, 2006 WL 622592 (Tex. App.—San Antonio Mar. 15, 2006, no pet.) (mem. op.). In *Luna*, a city employee ("Perales") was an "umpire and referee for various sports." 2006 WL 622592 at *1. Perales used a city vehicle during work hours to purchase breakfast for other employees. *Id.*[14] Either on the way to or back from picking up the food, Perales collided with Luna's vehicle. *Id.* at *1. Luna sued Perales and the City of Eagle Pass. The City filed a plea to the jurisdiction and motion to dismiss, which the trial court denied. *Id.* The City argued that Perales' trip during a break to purchase food and drink "did not further, directly or indirectly, the City's business." *Id.* at *2. Luna's evidence established that (1) Perales was "on the clock" and earning wages at the time the accident

[14] There is a rebuttable presumption "that an employee [is] in the scope of employment if the employer owns the vehicle and regularly employs the driver." *Cnty. of Hidalgo v. Taylor*, No. 13-21-00090-CV, 2022 WL 2838423, at *2 (Tex. App.—Corpus Christi–Edinburg July 21, 2022, no pet.) (mem. op.). Given that Iheagwam was driving her own car when the accident occurred, there is no such rebuttable presumption regarding course and scope in this case.

25

occurred; (2) an employee's purchase of food and drink for other employees "can benefit the employer in several ways;" (3) it was a "routine practice" for an employee to leave to purchase food and drink for the other employees; and (4) the supervisors gave express or implied permission to Perales to use a City vehicle for that purpose. *Id.* The court of appeals affirmed the trial court's denial of the City's plea to the jurisdiction, holding the evidence created a fact issue as to whether Perales was acting within the course and scope of his employment when the accident occurred. *Id.*

*Luna* is inapposite. First, Perales was on the clock and driving a city-owned vehicle when the collision at issue occurred. Second, that it was a "routine practice" for an employee to leave to purchase food and drink for the other employees and that supervisors gave express or implied permission to Perales to use a City vehicle for that purpose sets *Luna* apart from the present case. There was no showing here that Iheagwam had permission to stay on the AISD campus after her cafeteria duty ended. Rather, the evidence established that she was driving her own car when the accident occurred, that no one directed her to drive to the administrative building, and that she was no longer on duty or being paid for her travel time to the administrative block.

Velazquez also relies on *City of Houston v. Lal*, 605 S.W.3d 645 (Tex. App.—Houston [1st Dist.] 2020, no pet), which stemmed from a Houston police

officer's collision while driving a city-owned police car. *Id.* at 647. The officer ("Ryans") was off duty the day of the accident but remained on call to respond to human-trafficking cases. *Id.* Immediately before the accident, Ryans, who was driving, looked at his city-owned cell phone to see who was calling him. *Id.* The distraction caused the accident. *Id.* The accident victim sued the City of Houston for negligence, alleging Ryans was acting within the scope of his employment when the accident occurred. *Id.* The City filed a plea to the jurisdiction, arguing Ryans was not acting within the scope of his employment when the collision occurred. *Id.* at 647–48. The trial court denied the plea to the jurisdiction. *Id.* at 648.

The City argued that Ryans was not on duty and "his on-call status, standing alone, did not render his conduct within the scope of his employment." *Id.* at 649. The City argued that "looking at a ringing phone" did not render Ryans' conduct within the scope of employment, but this Court disagreed, noting that "Ryans's phone was issued by the city, and Ryans was on call. From these undisputed facts, a factfinder could reasonably infer that Ryans was obligated in his capacity as a peace officer employed by the city to answer incoming calls on this phone so that he could be returned to duty if requested by the vice division." *Id.* We observed that even if Ryans was not on duty when the accident occurred, as the City asserted, that fact was not dispositive. "The question is whether there is a

27

connection between Ryans's job duties and his allegedly tortious conduct." *Id.* at 650. We held the City failed to prove conclusively that Ryans was not acting within the scope of his employment at the time of the accident, and therefore, the trial court did not err in denying the city's jurisdictional plea. *Id.* at 649.

*Lal* is distinguishable, primarily because Ryans was "on call" at the time of the accident and he was driving a city-owned car and looking at a city-owned phone in connection with his work.[15] None of those factors is at play in the present case. Iheagwam was not on duty when she struck Velazquez with her personal car. Unlike Ryans, she was not on call and there was no possibility she would be returned to work that day. In addition, there is no allegation Iheagwam was distracted immediately before the accident by any aspect of her job.

Finally, Velazquez relies on *City of Houston v. Mejia*, 606 S.W.3d 901 (Tex. App.—Houston [14th Dist.] 2020, pet. denied), another case involving a police officer ("Gallagher") involved in a traffic accident while driving a city-owned vehicle. In *Mejia*, the facts establish that Gallagher finished her shift at 4 p.m. on

---

[15] "[T]he mere fact that an off-duty officer was on call does not render his act within his employment's scope." *City of Houston v. Lal*, 605 S.W.3d 645, 649 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (citing *City of Balch Springs v. Austin*, 315 S.W.3d 219, 225 (Tex. App.—Dallas 2010, no pet.)). "On the other hand, mixed motives do not prevent an officer's act from being within his employment's scope if his act served a purpose of his employer in addition to any other purpose the act served." *Id.* (citing *Kraidieh v. Nudelman*, No. 01-15-01001-CV, 2016 WL 6277409, at *6 (Tex. App.—Houston [1st Dist.] Oct. 27, 2016, no pet.) (mem. op.)).

28

the day of the accident. *Id.* at 906. Gallagher's husband, a Houston police lieutenant, asked her to pick up his city-issued vehicle from the city garage and to drive it to their home so he would have his car available at the start of his next shift. *Id.* After picking up the police car and on her regular commute home, Gallagher was involved in an accident with the plaintiffs. *Id*. at 904. Gallagher testified that at the time of the accident, she had no official duties and, other than still being on call, was not being paid for her time. *Id.* The City of Houston filed a motion for summary judgment asserting it was entitled to immunity because Gallagher was not in the course and scope of her employment when the accident occurred. *Id.* The trial court denied the City's summary judgment motion. *Id.*

The City argued that Gallagher was not acting in the scope of her job as a police officer but was, rather, "just another commuter on a Friday evening heading home to enjoy time off on the weekend." *Id.* at 906. The plaintiffs responded that Gallagher was driving a city-owned vehicle, carrying out instructions issued by an HPD officer who outranked her, and that HPD "would derive benefit from her actions." Our sister court of appeals agreed with the plaintiffs observing that Gallagher's affidavit reflected that "her husband (a superior officer employed by Gallagher's employer) asked her to pick up his city-issued vehicle from the city garage so her superior officer would have the vehicle available at the beginning of

his shift (a benefit to Gallagher's employer, HPD)." *Id*. Therefore, Gallagher was not a mere commuter on the way home from work. *Id.*

Velazquez's reliance on *Mejia* is misplaced. First, Gallagher was directed by a superior to drive the police car home. By contrast, the evidence indicates Iheagwam was not directed by anyone to stop or drive to the administrative building on the way home to discuss her health insurance benefits. Second, the vehicle involved in the collision in *Mejia* was a city-owned vehicle, whereas Iheagwam was driving her personal vehicle. And third, Gallagher's conduct in driving the car home directly benefitted her employer because it enabled her husband, a police lieutenant, to have his vehicle at home when his next shift began. And while Velazquez argues as much, there is no authority that suggests that Iheagwam's asking about her health insurance card benefitted AISD.

*Luna*, *Lal*, and *Mejia* do not stand for the proposition that the unilateral decision of Iheagwam to drive her personal car to the administrative building after her cafeteria shift ended to ask a question about her health-insurance benefits conferred a benefit on AISD and, thus, fell within the scope of her employment. Velazquez does not cite any authority, other than Iheagwam's subjective deposition testimony, to support his argument that Iheagwam's actions were related to her job duties and benefited AISD. *See Molina*, 2018 WL 3977945, at *5 ("An employee's conclusory testimony that he was acting in the course and

30

scope of his employment amounts to no evidence if the contrary is established as a matter of law."). The key question is whether, when viewed objectively, there is a connection between Iheagwam's cafeteria job duties and her alleged tortious act. *Lal*, 605 S.W.3d at 649. The evidence presented fails to establish this necessary and key connection to establish that Iheagwam was acting within the course and scope of her employment.

Taking as true all evidence favorable to Velazquez and indulging every reasonable inference and resolving any doubts in his favor, as we must, we hold that Iheagwam was not acting within the scope of her employment with AISD when she struck Velazquez with her car. Thus, the trial court improperly denied AISD's Amended Plea. We sustain AISD's sole issue.

## Conclusion

We reverse the district court's order denying AISD's plea to the jurisdiction and render judgment dismissing Velazquez's claims against AISD for lack of jurisdiction.

Veronica Rivas-Molloy
Justice

Panel consists of Justices Hightower, Rivas-Molloy, and Farris.